WEST CHICAGO STREET RAILROAD COMPANY *v.* PEOPLE OF THE STATE OF ILLINOIS *ex rel.* CITY OF CHICAGO.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 241.   Argued January 10, 11, 1906.—Decided April 9, 1906.

Although the judgment of the state court rests partly on grounds of local or general law, and although the opinion may not expressly refer to the Constitution of the United States, if by its necessary operation the judgment rejects a claim, based on a constitutional right specially set up in the answer, that the relief prayed cannot, in any view of the case, be granted consistently with the contract or due process clauses of the Constitution, this court has jurisdiction to review under § 709, Rev. Stat.

In a navigable stream the public right is paramount, and the owner of the soil under the bed can only use it so far as consistent with the public right; and a municipality, through which a navigable stream flows, cannot grant a right to obstruct the navigation thereof nor bind itself to permit the continuance of an obstruction, and this rule is not affected

by the fact that the person claiming a right to continue such an obstruction is the owner in fee of the bed of the stream.

A municipal ordinance giving permission to a street railroad company to construct a tunnel under a navigable stream, the law of the State providing that railways shall not be constructed so as to interrupt the navigation of any water in the State, does not amount to a contract under the contract clause of the Constitution, so that the city could not subsequently require the company to lower the tunnel so as not to interfere with the increased demands of navigation; nor, in the absence of any provision to that effect, would it be construed as containing an implied covenant that the municipality would bear the expense of such alterations required by subsequent ordinances.

A municipality is under the duty of protecting the unobstructed navigation of navigable rivers under its jurisdiction; and it cannot be exempted therefrom by making agreements in regard thereto.

Courts may look through and behind mere forms, and interfere, whenever necessary, for the protection of private rights against an illegal, arbitrary exercise of governmental power.

The right of a railroad company to maintain a tunnel under a navigable river is subject to the paramount public right of navigation, and where it has been constructed under municipal ordinance and state law that it shall not interrupt navigation, the duty of not obstructing the navigation is a continuing one; and, if the increased demands of navigation at any time require a deeper channel than when the tunnel was originally constructed, it is within the power of the municipality to compel the railroad company at the latter's own expense to either remove the tunnel or lower it to conform with the necessities of commerce, and, as in this case, to the rule established by act of Congress, and such action of the municipality is not unconstitutional, and does not amount either to taking the property for public use without compensation, or depriving the company of its property without due process of law. *C., B. & Q. R. R. Co.* v. *Drainage Commission,* 200 U. S. 251, followed.

THE facts are stated in the opinion.

*Mr. John P. Wilson,* with whom *Mr. Charles S. Babcock* was on the brief, for plaintiff in error:

This court has jurisdiction. The judgment seeks to enforce an ordinance passed by the city council of Chicago. Whether or not such subsequent ordinance impairs the obligation of the contract between the company and the city depends upon the construction given to such contract. The Supreme Court of Illinois entered its judgment requiring the company to comply with the ordinance which, it is alleged, impairs the obligation

of the contract between the company and the city. The judgment is based upon a construction of the contract between the city and the company, which is denied by the company.

If this court should uphold the company's construction of the contract, then the subsequent ordinance, enforced by the judgment, impairs the obligation of such contract. This presents a Federal question involving an independent determination by this court of the true construction and legal effect of the contract between the city and the company under which the tunnel was constructed. *Vicksburg R. R. Co.* v. *Dennis,* 116 U. S. 667; *Bryan* v. *Board of Education,* 151 U. S. 639; *City Light Co.* v. *Tallahassee,* 186 U. S. 406; *Wilson* v. *Standefer,* 184 U. S. 399; *L. & N. R. R. Co.* v. *Palmes,* 109 U. S. 244; *Chicago R. R. Co.* v. *Nebraska,* 170 U. S. 57; *University* v. *The People,* 99 U. S. 321; *Houston &c. R. R.* v. *Texas,* 177 U. S. 66.

An ordinance passed by the city council is a law within the meaning of the impairment clause of the Federal Constitution. *St. Paul Gas Light Co.* v. *St. Paul,* 181 U. S. 148.

The railroad company's tunnel when and as constructed was lawful and was private property owned in fee by the railroad company. The company was the owner in fee of the bed of the river at the point where the tunnel was constructed. *Chicago* v. *Laflin,* 49 Illinois, 172; *McCartney* v. *C. & E. R. R. Co.,* 112 Illinois, 611; *Chicago* v. *Van Ingen,* 152 Illinois, 624.

The tunnel was constructed wholly below the bed of the Chicago river and at a depth sufficient to allow the free navigation of said river by vessels of the largest size in use on the river at the time of the completion of the tunnel and below the depth of said river as established by any lawful authority having jurisdiction.

At the date of the contract made by the city under which the tunnel was constructed the city of Chicago under its charter had jurisdiction over the river and full power to authorize the construction of the tunnel. Rev. Stat. Ill. c. 24, art. 5. Until the United States assumed jurisdiction over the Chicago river by the act of Congress, September 13, 1900, the State of

Illinois had plenary authority over the Chicago river. *Wilson v. Blackbird Creek Marsh Co.,* 2 Peters, 245; *Gilman v. Philadelphia,* 3 Wall. 713; *Pound v. Turck,* 95 U. S. 459; *Transportation Co. v. Chicago,* 99 U. S. 635; *Corrigan Transportation Co. v. Sanitary District,* 125 Fed. Rep. 611; *Escanaba v. Chicago,* 107 U. S. 678; *Miller v. Mayor of New York,* 109 U. S. 385; *Cardwell v. Bridge Co.,* 113 U. S. 205; *County of Mobile v. Kimball,* 102 U. S. 691; *Prosser v. North Pac. R. R. Co.,* 152 U. S. 59; *Willamette Iron Bridge Co. v. Hatch,* 125 U. S. 1.

The tunnel was as lawful as though it had been directly constructed by the city itself under its charter powers. *McCartney v. Chicago & Evanston R. R. Co.,* 112 Illinois, 611. The carrying of passengers through the tunnel is commerce of the same grade as the carrying of passengers or freight on the river. *Transportation Co. v. Chicago,* 99 U. S. 635.

The ordinance requiring the company to lower the tunnel, constructed by it under agreement with the city, was void and inoperative as it impaired the obligation of that contract, in violation of § 10, Art. I, of the Constitution of the United States.

The tunnel being the lawful property of the railroad company could not be taken from the company for the purpose of improving the navigation of the Chicago river without compensation being made to the company. *Yates v. Milwaukee,* 10 Wall. 497; *Bridge Co. v. United States,* 105 U. S. 470; *United States v. Navigation Co.,* 148 U. S. 312; *Scranton v. Wheeler,* 179 U. S. 141; *United States v. Lynch,* 188 U. S. 445; *Chicago v. Laflin,* 49 Illinois, 172; *Chicago v. Van Ingen,* 152 Illinois, 624.

The enforcement of the judgment of the state court would constitute a taking of the railroad company's property. The mandate is either to remove the tunnel or to lower it, at the expense of the company. A removal of the tunnel at the expense of the company would take the tunnel away from the company and also take from it the cost of its removal. The lowering of the tunnel would take from the company the money expended in such lowering. In either case the private property of the company is taken from it for public use, namely,

in the interest of the improvement of the navigation of the Chicago river. *Bridge Co.* v. *United States*, 105 U. S. 470, 506.

The enforcement of the ordinance requiring the railroad company to lower its tunnel at its own cost would deprive the company of its property without due process of law. *C., B. & Q. R. R.* v. *Chicago*, 166 U. S. 235.

There was no reservation, express or implied, in the contract under which the tunnel was constructed that the company would lower or remove its tunnel in case it became an obstruction to navigation. When the ordinance was passed under which the tunnel was constructed, the State of Illinois had plenary power over the Chicago river. *Escanaba Co.* v. *Chicago*, 107 U. S. 683. This power included the right to construct a bridge over or across the river without a draw. *Gilman* v. *Philadelphia*, 3 Wall. 713. See also *Transportation Co.* v. *Chicago*, 99 U. S. 635, where the right of the city to construct a tunnel under the river at La Salle street was involved. The Supreme Court of Illinois had decided in *McCartney* v. *C. & E. R. R. Co.*, 112 Illinois, 611, that where a railroad company constructed a bridge across the river under an ordinance passed by the city council, that in legal effect the bridge was constructed by the city of Chicago under its charter powers.

Relying upon this decision of the Supreme Court of Illinois, and on the authority and power given to the city of Chicago to construct tunnels under the river, the railway company entered into the contract under which the tunnel was constructed. The tunnels and bridges constructed by the city directly have long been obstructions to navigation.

The city of Chicago had no power to require or authorize any changes to be made in the bed of the Chicago river without the approval of the Secretary of War, and therefore the company was neither under obligation nor had the right to do the work required by the ordinance and the mandate of the court. § 10, River and Harbor Act of 1899; River and Harbor Act of 1890; *Cummings* v. *Chicago*, 188 U. S. 410; *Chicago* v. *Law*, 144 Illinois, 569; *Lussem* v. *Sanitary District*, 192 Illinois, 404.

Mr. James Hamilton Lewis and Mr. Granville W. Browning for defendants in error:

The writ of error should be dismissed for want of jurisdiction. The Supreme Court of Illinois decides that the question of fact, under the Illinois law, is finally settled by the Appellate Court that this tunnel is an obstruction to navigation of the Chicago river at the point where situated. West Chicago St. R. R. Co. v. The People, 214 Illinois, 18. When the decision of the highest court of a State is brought before this court by writ of error, the conclusions of fact found by the state court will not be reviewed. Telluride Power Co. v. Rio Grande &c. Ry., 175 U. S. 639; Egan v. Hart, 165 U. S. 189. This construction of the state statute will be adopted by this court. Bacon v. Texas, 163 U. S. 207; Allen v. Arguimbau, 198 U. S. 149.

Where the state court construes the charter of the company in such a manner that the subsequent legislation or ordinance can cut no figure, there is no Federal question and the writ of error will be dismissed. Henderson Bridge Company v. Henderson, 141 U. S. 679. The Illinois Supreme Court has construed plaintiff's charter rights—its contract—under the ordinance of 1888. As that construction was broad enough to dispose of the whole case, this writ of error must be dismissed. Before this court can be called upon to decide whether there has been an impairment of a contract it must first appear that there was a valid contract, subject to impairment. New Orleans v. Water Works Co., 142 U. S. 79; Bacon v. Texas, 163 U. S. 207; Baltimore & Potomac R. R. v. Hopkins, 130 U. S. 210; White v. Leovy, 174 U. S. 91; Central Land Co. v. Laidley, 159 U. S. 103; Yesler v. Commissioners, 146 U. S. 646.

Plaintiff's title is not disputed, nor its franchise, nor its right to maintain a tunnel under the river which will not interfere with navigation. The question of the title of the riparian owner is one of local law. Whitaker v. McBride, 197 U. S. 510.

Plaintiff's tunnel is now an unlawful structure. Plaintiff claims that without the ordinance of 1888 it has the right to maintain its tunnel in the bed of the river because it owns both

sides of the river at that point. To constitute a lawful structure in this navigable river there must be a grant from the State, or, in this case, by the city, the agent of the State, and since the United States Government has taken jurisdiction over the river, the Government also must give its consent. *Cummings* v. *Chicago*, 188 U. S. 410; *Atlee* v. *Packet Co.*, 21 Wall. 389.

But whether the plaintiff's right rests on the ordinance of 1888 or rests on the ownership of both banks of the river, when the tunnel, by the growth of commerce, becomes an obstruction to navigation, it must be abated as a nuisance; it is an unlawful structure. Any structure in the bed of a navigable stream is erected and maintained subject to the paramount right of navigation. *C., B. & Q. Ry. Co.* v. *The People*, 212 Illinois, 103; *United States* v. *Bellingham Boom Co.*, 176 U. S. 211.

Plaintiff's title is subject to the permanent right of navigation, and the maintenance of the tunnel is subject to the same right. The title to the soil under the bed of the river is in the plaintiff but it is a qualified title, subject at all times to the public easement of navigation.

Any structure put under the river bed must be at plaintiff's risk, and must be removed or lowered whenever navigation requires. *The People* v. *West Chicago R. R. Co.*, 203 Illinois, 551; *C., B. & Q. Ry. Co.* v. *The People*, 212 Illinois, 103; *Chicago* v. *Laflin*, 49 Illinois, 172; *Stockton* v. *B. & N. Y. Ry.*, 32 Fed. Rep. 9; *Braxon* v. *Breslet*, 64 Illinois, 488; *Hawkins Point Light House Case*, 39 Fed. Rep. 87; *Illinois Central R. R.* v. *Illinois*, 146 U. S. 458; *Scranton* v. *Wheeler*, 179 U. S. 163; *S. C.*, 57 Fed. Rep. 809; *Parmenter* v. *Attorney General*, 10 Price, 412; *Sage* v. *Mayor*, 154 N. Y. 61; *Attorney General* v. *Johnson*, 2 Wils. Ch. 87; *Attorney General* v. *Richards*, 2 Const. 603.

The State could give the city the power to lessen or destroy the navigability of the river, or to enable plaintiff so to do, only by explicit language, if at all. There can be no pretense that it has attempted so to do. *Chicago* v. *Blair*, 149 Illinois, 310; *Coquard* v. *Oquawaka*, 192 Illinois, 355; *Kiel* v. *Chicago*, 176 Illinois, 137; *Smith* v. *McDowell*, 148 Illinois, 51.

The city has power to order this obstruction removed or lowered. Under the Cities and Villages Act of 1872 the city has the power to construct tunnels and regulate the use thereof, and to deepen, widen, alter or change the channel of water courses. It has jurisdiction on all waters within or bordering upon the same to the extent of three miles beyond the limits of the city. While the authority of Congress is paramount, if there were a difference of opinion, the power is cumulative and concurrent. *Lake Shore & Mich. S. Ry.* v. *Ohio,* 165 U. S. 365; *Cummings* v. *Chicago,* 188 U. S. 410.

Plaintiff is not entitled to compensation. The decisions of the state Supreme Court in this case are conclusive on this point and are binding on this court. In these decisions are found a construction of the rights of a riparian owner on a navigable stream entirely within the State, a construction of the Horse and Dummy Act, and a construction of plaintiff's contract. Neither of these is a Federal question, and wherever such matters are construed by the state courts, this court follows the construction of the state court. *West Chicago St. R. R. Co.* v. *The People,* 214 Illinois, 9; *The People* v. *West Chicago St. R. R. Co.,* 203 Illinois, '551; *C., B. & Q. Ry. Co.* v. *The People,* 212 Illinois, 103; *Transportation Co.* v. *Chicago,* 99 U. S. 635; *Gibson* v. *United States,* 166 U. S. 269, 276; *United States* v. *Bellingham Bay Boom Co.,* 176 U. S. 211; *Scranton* v. *Wheeler,* 179 U. S. 159; *S. C.,* 57 Fed. Rep. 803; *Bridge Co.* v. *United States,* 105 U. S. 470; *State* v. *The Wheeling Bridge Co.,* 13 How. 518; *United States* v. *Moline,* 82 Fed. Rep. 592; *Hawkins Point Light House Case,* 39 Fed. Rep. 77; *Stockton* v. *B. & N. Y. Ry.,* 32 Fed. Rep. 9; *State* v. *Sargent,* 45 Connecticut, 358; *New Orleans Gas Co.* v. *Drainage Commissioners of N. O.,* 197 U. S. 453.

MR. JUSTICE HARLAN delivered the opinion of the court.

This case presents some questions of jurisdiction and constitutionality arising out of the relative rights and duties of the city of Chicago and the West Chicago Street Railroad Com-

pany in respect of a tunnel maintained by that company under the South Branch of Chicago river at or near Van Buren street in that city.

The judgment in the Circuit Court of Cook County, Illinois, was in favor of the railroad company, but it was reversed in the Appellate Court, First District, the former court being directed to give to the city the relief asked. Upon appeal to the Supreme Court of Illinois a judgment was rendered in favor of the city.

The contention of the company is that the judgment under review cannot be sustained consistently either with the contract clause of the Constitution of the United States or with the due process of law enjoined by the Fourteenth Amendment.

The case presented by the record is substantially as will be now stated.

On or about April 2, 1888, the City Council of Chicago adopted in due form the following ordinance:

"Whereas, the board of directors of the West Chicago Street Railroad Company, on the second day of April, 1888, by and at the request of the Mayor of the city of Chicago, adopted the following resolution: Resolved, That the West Chicago Street Railroad Company, in consideration of the passage and approval by the Mayor of the three ordinances passed by the City Council of Chicago on the thirtieth day of March, 1888; one granting to the West Division Railway Company the right to change its motive power from horse to cable or electric power; one granting to the Chicago Passenger Railway Company the right to make the same change; and one granting to the West Chicago Street Railroad Company the right to construct its tracks on Jefferson street between Madison and Washington streets, and to use horse, cable or electric power thereon, hereby agrees by and with the city of Chicago at its own expense to construct a tunnel under the Chicago river and acquire the necessary right of way therefor on a route to be located by said company between Madison and Twelfth streets, with the east terminus at Fifth avenue or west thereof, and

the western terminus at Halsted street or east thereof; provided, however, that this company shall have the right from said city to construct said tunnel under any intervening street or streets and said river within said limits, but such location and construction shall be such as not to interfere with the capacity, usefulness or grade of said streets; said tunnel to be used by this company for street railroad tracks, and the construction thereof shall be commenced within three years and be completed within four years after the said City Council shall grant permission to said railroad company to make said improvements, unless prevented by injunctions or strikes, and the time said construction is so interfered with shall be added to said four years, all work to be done in a manner satisfactory to the Commissioner of Public Works, and the tracks through the tunnel shall be connected with the street railroad tracks controlled by this company. Now, therefore, be it ordained by the City Council: That the agreement in said resolution contained be and the same is hereby accepted by and on behalf of the city of Chicago as a consideration from said company for the passage and approval by the Mayor of the ordinances in said resolution specified, and authority is hereby granted said company to make the improvements therein mentioned."

When this ordinance was passed there was in force what is known as the Horse and Dummy Act, passed in 1874, which provided: "That any company which has been or shall be incorporated under the general laws of this State, for the purpose of constructing, maintaining or operating any horse or dummy railroad or tramway, may enter upon and appropriate any property necessary for the construction, maintenance and operation of its road, and all necessary siding, side tracks and appurtenances, and may, subject to the provisions contained in this act, locate and construct its road upon or over any street, alley, road or highway, or across or over any waters in this State, *in such manner as not to* unnecessarily obstruct the public use of such street, alley, road or highway, or *interrupt the navigation of such waters.*"

In *West Chicago Street R. R. Co.* v. *The People*, 214 Illinois, 9, 19, the Supreme Court of Illinois, referring to this act, said: "This act was *an addition* to the charter of any company organized under the general incorporation act, and its provisions have existed under some form ever since, conferring powers, upon street railroad companies organized as the defendant is. It gave the defendant the right to construct its railroad either over or across the Chicago river, which included the tunnel, *subject to the condition contained in it.* Defendant could only hold real estate for the transaction of its business of maintaining and operating a street railroad, and the statute fixed the conditions under which it might use its real estate for building the tunnel."

The tunnel was completed by the railroad company in March, 1894, and has ever since been used and is now being used as a passageway under the river for its cars. When constructed (as well as at the present time) the water in the South Branch of the Chicago river over the tunnel near Van Buren street varied in depth from seventeen to eighteen and three-tenths feet.

On the third day of March, 1899, Congress passed a River and Harbor Act, among the provisions of which was one directing the Secretary of War to cause surveys to be made and the cost of improving certain rivers and harbors to be estimated and reported to Congress, as follows: "Improving Chicago river in Illinois: survey and estimate of cost for a channel twenty-one feet deep from its mouth to the stock yards, on the South Branch, and to Belmont avenue, on the North Branch so far as may be permitted by existing docks and wharves, exclusive of cost of removing or constructing bridges or piers or lowering tunnels; and the aforesaid depth of twenty-one feet is hereby adopted as the project depth for the improvement in lieu of that fixed by the act of June third, eighteen hundred and ninety-six; *Provided,* that all the work of removing and reconstructing bridges and piers and lowering tunnels necessary to permit a practicable channel with said depth to

be obtained shall be done, or caused to be done, by the city of Chicago, without expense to the United States." 30 Stat. 1121, 1156.

After the passage of that act steps were taken to dredge the Chicago river so as to deepen its channel in accordance with the provisions of the act of Congress, and, it is alleged, such work "has been proceeding under the authority and supervision of the Government of the United States, for the purpose of providing a sufficiently deep channel for the uses and purposes of commerce and navigation as aforesaid."

For the purpose of obeying the act of Congress, and in order to obtain a free and unobstructed navigation of the Chicago river for the benefit of commerce, interstate and domestic, the City Council of Chicago, on the nineteenth day of March, 1900, duly passed the following ordinance: "*Whereas*, by act of Congress of March 3, 1899, it is provided that in the survey and estimate of cost for a channel twenty-one feet deep, in the improvement of the Chicago river from its mouth to the stock yards on the South Branch, and to Belmont avenue on the North Branch, the aforesaid depth of twenty-one feet is adopted as the project depth for such improvement; *whereas*, it is in said act further provided that all the work of removing and reconstructing bridges and piers and lowering tunnels necessary to permit a practicable channel with said depth to be obtained, shall be done or caused to be done by the city of Chicago, without expense to the United States; *whereas*, the tunnel under the South Branch of the Chicago river at Van Buren street was constructed by the West Chicago Street Railroad Company under a certain ordinance of the city of Chicago, passed April 2, 1888; *whereas*, a channel in the Chicago river, of the depth of at least twenty-one feet is now made necessary by the requirements of navigation and by the increase in the draft of vessels engaged in the shipping trade of the Lakes; *whereas*, the said tunnel is an obstruction to said proposed improvement to the Chicago river and to the navigation thereof, and as such obstruction must be lowered so that there may be above it in

said river a depth of at least twenty-one feet of water, or be removed altogether: *Now, therefore, be it ordained by the City Council of the city of Chicago*: That the West Chicago Street Railroad Company be and it is hereby ordered and directed within three months after the date of the passage of this ordinance, at the sole cost and expense of said West Chicago Street Railroad Company and without cost, damage, loss or expense of any kind, whatsoever to the city of Chicago, to proceed to lower the tunnel under the South Branch of the Chicago river at or near Van Buren street, being the same tunnel heretofore constructed by the said West Chicago Street Railroad Company under an agreement dated April 2, 1888, between the said West Chicago Street Railroad Company and the city of Chicago, and an ordinance passed by the City Council of the city of Chicago, April 2, 1888, authorizing the construction of said tunnel in accordance with the provisions of said agreement, so as to provide for a clear depth above said tunnel of at least twenty-one feet of water at all times. Said work shall be performed by the said West Chicago Street Railroad Company under the supervision and direction and subject to the approval of the Commissioner of Public Works of the city of Chicago, and shall be completed on or before March 1, 1901."

In execution of the provisions of that ordinance the city caused notice to be given to the railroad company, demanding compliance with its provisions. The company did not heed that notice.

The present action was thereupon instituted by the people of Illinois, on the relation of the city of Chicago, against the railroad company. The specific relief asked was the issuing of a writ of mandamus directing the railroad company, without cost, damage, loss or expense of any kind whatsoever to the city, to proceed to lower its tunnel under the South Branch of the Chicago river at or near Van Buren street, so as to provide for a clear depth above it of at least twenty-one feet of water at all times, for its entire width and length, or to wholly remove it "so that the same shall cease to be an obstruction to the free

navigation of said Chicago river or the South Branch thereof, and to perform said work under the supervision and direction of the Commissioner of Public Works of the city of Chicago."

The Circuit Court found the issues for the defendant, and denied the application for a mandamus. Upon error to the Appellate Court, First District, the judgment of the Circuit Court was reversed and the cause remanded with directions "to issue a writ of mandamus commanding the railroad company to remove its tunnel, said writ not to be executed until. the Washington street and La Salle street tunnels are both removed or lowered to a sufficient depth to be no longer an obstruction to navigation."

Upon appeal to the Supreme Court of Illinois a final judgment was there entered awarding a peremptory writ of mandamus as prayed for in the petition. *West Chicago Street R. R. Co.* v. *People*, 214 Illinois, 9.

As explanatory of the reference to the tunnels on Washington and La Salle streets it may be here stated that those tunnels belonged to the city, and were located between the tunnel at Van Buren street, owned by the railroad company, and the mouth of the river at the Lake. Of course, until the city's tunnels are lowered or removed, the lowering or removal of the tunnel on Van Buren street would not be of material aid to navigation.

We come now to consider the questions arising on the record and discussed at the bar.

1. The contention of the city that the writ of error should be dismissed for want of jurisdiction in this court cannot be sustained. It is true that the judgment of the state court rests partly upon grounds of local or general law. But, by its necessary operation—although the opinion of the state court does not expressly refer to the Constitution of the United States— the judgment rejects the claim of the company, specially set up in its answer, that the relief asked by the city cannot, in any view of the case, be granted consistently, either with the contract clause of the Constitution or with the clause prohibiting

the State from depriving anyone of his property without due process of law. If that position be well taken, then a judgment based merely upon grounds of local or general law would be error; for, the Federal questions raised cover the whole case, and are of such a nature that the rights of the parties could not be finally determined without deciding them. As the judgment, by its necessary operation, denied the company's claims based on the Constitution of the United States, this court has jurisdiction to inquire whether those claims are sustained by that instrument. Our views on this question are fully stated in *Chicago, Burlington & Quincy R. R. Co.* v. *Drainage Commissioners*, 200 U. S. 561.

2. Great stress is placed by the railroad company on the fact that it is the owner in fee of the bed of the river at the point where the tunnel was constructed. But that fact is not vital in the present discussion; for it was adjudged by the state court—in harmony with settled doctrines, as will presently appear—that "the title to land under a navigable river is not the same as the title to the shore land;" that "in a navigable stream the public right is paramount, and the owner of the soil under the bed of such a stream can only use and enjoy it in so far as is consistent with the public right, which must be free and unobstructed;" that "the title to the upland is absolute and paramount, while the title to the lands over which the navigable water flows is subordinate to the public right of navigation;" and that "the city could not, if it would, grant the right to obstruct the navigation of the river, or bind itself to permit anything which has become an obstruction to be continued." 214 Illinois, 9, 20, 21.

3. We next consider the first of the strictly Federal questions raised by the company. Its contention is that the tunnel was constructed under a valid contract with the city, evidenced by the ordinance of 1888, and that the mere order to remove or lower the tunnel impaired the obligation of that contract, in violation of the Constitution.

Upon a careful scrutiny of the ordinance of 1888, we find no

clause or provision which so restricted the power of the city that it could not require the railroad company to lower or remove the tunnel when the public interests, as involved in the unobstructed navigation of Chicago river, demanded that to be done. The railroad company, in consideration of certain rights and privileges granted to it by the city, undertook to construct the tunnel; and it is true that when constructed the tunnel did not interfere with navigation; nor would it now obstruct navigation, if only boats and vessels of the size and capacity in use when the tunnel was constructed were engaged in commerce on the river. But such boats and vessels are insufficient to meet the present needs of commerce at Chicago. The business of that city has enormously increased since the passage of the ordinance of 1888, and, admittedly, the tunnel is now an obstruction to free navigation on the river by boats and vessels of large size. The railroad company may have believed, when the ordinance of 1888 was passed, that the tunnel would never interrupt or obstruct navigation. Nevertheless, the ordinance did not expressly or by necessary implication bind the city to forbear the exercise of any power it had to deepen the channel of the river and thereby improve navigation. As the city could not legally adopt an ordinance inconsistent with a statute of the State, we must read into the ordinance of 1888 that part of the act of 1874 which, as construed by the Supreme Court of Illinois, made it a condition of the right of a street railroad company to cross its cars through a tunnel under Chicago river that its road and tunnel should be so located and constructed as not unnecessarily to interrupt navigation. Apart from any question as to the power of the city to bargain away or surrender its authority to improve navigation and protect it against obstruction, the railroad company must be held to have accepted the ordinance and constructed the tunnel subject to the requirement that navigation should not be interrupted by it. As the present tunnel is an obstruction to the use of the river by many boats and vessels employed in commerce on the Lakes, and as, by the ordinance

in question, the city did not stipulate—even if it could lawfully have stipulated—that it would not exert whatever powers it had in order to protect the free navigation of Chicago river whenever it became necessary or proper to do so, the result must be that the execution of the order to lower or remove the tunnel would not impair the obligation of any contract protected by the Constitution of the United States. If, in the ordinance of 1888, the city had stipulated that it would meet the expense of any alteration of the tunnel made by its direction, a different question would have been presented. But the ordinance cannot be construed as containing such a stipulation, and consistently with the settled doctrines of this court no such stipulation can arise from mere implication. There is, in our judgment, no ground whatever for holding that the city, by the ordinance of 1888, came under the obligation of a *contract* to meet the cost of any changes in the tunnel that might be lawfully required in order that the river could be safely navigated by large vessels.

4. This brings us to the principal question in the case: Whether, consistently with the Constitution of the United States, the railroad company can be required to lower or remove the tunnel in question and (if it continues to use a tunnel in crossing Chicago river with its cars) to construct and maintain, at its own expense, such a tunnel as will conform to the provisions of the ordinance of March 19, 1900.

It is indisputable, on this record, that the depth of water over the present tunnel is not sufficient to accommodate many boats and vessels now commonly employed in commerce between Chicago and other cities and towns on the Lakes. It is to be taken also as indisputable that in order that such boats and vessels may navigate the South Branch of Chicago river with safety, the depth of water over the Van Buren street tunnel must be at least as great as that specified in the city ordinance of 1900. We assume also—as by the record we may properly do—that the ordinance is a reasonable, not an arbitrary exertion of the power conferred on the city " to construct and keep

in repair bridges, viaducts and tunnels and to regulate the use thereof," and "to deepen, widen, dock, cover, wall, alter and change the channel of watercourses." We must, in addition, upon this record, assume that the means adopted by the city have a direct, real and substantial connection with the public object intended to be accomplished, namely, to free the navigation of the South Branch of Chicago river from an obstruction which prevents the use of that river by vessels of the size demanded by the vast business transacted at Chicago.

As already observed, the contention of the company is, in effect, that even if the present tunnel be an obstruction to the navigation of the river by large vessels, the lowering or removal of the tunnel against the company's will, would be a *taking* of private property for public use without compensation, in violation of the constitutional guarantee of due process of law.

This result, it is supposed by the railroad company, necessarily follows from the fact that the present tunnel was constructed with the assent of the city, and when constructed was sufficient for purposes of navigation by vessels, of whatever size, then engaged in commerce on the Chicago river. But these facts are not all that must be considered in this discussion. They cannot be considered apart from other matters of a vital character, namely: That the city was under the duty of protecting the free navigation of the river and its branches—a duty from the discharge of which it could not be exempted by any agreement it might make with the railroad company; that the city granted the right to construct the present tunnel under the river subject to the condition, necessarily implied by the statute of 1874 in force when the ordinance of 1888 was adopted, that the tunnel should not interrupt navigation; that if the assent of the company to such a condition was important, it must be held to have given such assent by accepting the ordinance of 1888, into which, as already indicated, must be read the requirement in the statute of 1874 that navigation should not be unnecessarily interrupted; and that the provision in

that statute forbidding any interruption of the navigation of
the river had reference to the needs of navigation not only at
the time the tunnel was constructed, but its needs at any sub-
sequent period as found and declared by the city, upon reason-
able grounds; which declaration would, of course, be subject
to the condition, vital in our system of government, that the
courts may look through and behind mere forms, and interfere,
whenever necessary, for the protection of private rights against
an illegal, arbitrary exercise of governmental power.

In addition to these considerations we may suggest the im-
portant one that the rights of the company, as the owner of the
fee of land on either side of the river or in its bed, were subject
to the paramount right of navigation over the waters of the
river. *Weber* v. *Harbor Com'rs,* 18 Wall. 57, 66; *Illinois Cen-
tral R. R. Co.* v. *Illinois,* 146 U. S. 387, 458; *Shively* v. *Bowlby,*
152 U. S. 1, 30; *Gibson* v. *United States,* 166 U. S. 269, 276;
*Scranton* v. *Wheeler,* 179 U. S. 163; *C., B. & Q. Ry. Co.* v. *People,*
212 Illinois, 103; *Brazen* v. *Bressler,* 64 Illinois, 488; *People* v.
*Vanderbilt,* 28 N. Y. 396; *Sage* v. *Mayor,* 154 N. Y. 61; *State*
v. *Parrott,* 71 N. Car. 311; *State* v. *Dibble,* 4 Jones (N. C.), 107;
*Diedrich* v. *Northwestern &c. Ry. Co.,* 42 Wisconsin, 248; *Par-
meter* v. *Attorney General,* 10 Price, 412; *Williams* v. *Wilcox,*
8 Ad. & El. 314; *Colchester* v. *Brooke,* 7 Q. B. 339.  The prin-
ciple is thus declared by a leading text-writer: "The privilege
of navigation upon all waters which are capable of such use
in their natural condition and are accessible without trespass-
ing upon private lands, is a common and paramount right.
. . . At common law the right of navigating a public
stream is paramount to the right of passage across the stream
by means of a bridge." Gould on Waters, §§ 86, 88.

If, then, the right of the railroad company to have and main-
tain a tunnel under the Chicago river is subject to the para-
mount public right of navigation; if its right to maintain a
tunnel in the river is a qualified one, because subject to the
specific condition in the act of 1874 that no tunnel should in-
terrupt navigation; if the present tunnel is an obstruction to

navigation, as upon this record we must take it to be; and if the city, as representing the State and public, may rightfully insist that such obstruction shall not longer remain in the way of free navigation; it necessarily follows that the railway company is under a duty to comply with the demand made upon it to remove, at its own expense, the obstruction which itself has created and maintains. If the obstruction cannot be removed except by lowering the tunnel to the required depth and (if a tunnel is to be maintained) providing one that will not interrupt navigation, then the cost attendant upon such work must be met by the company. The city asks nothing more than that the railroad company shall do what is necessary to free navigation from an obstruction for which it is responsible, and (if it intends not to abandon its right to maintain a tunnel at or near Van Buren street) that it shall itself provide a new tunnel with the necessary depth of water above it. The case differs somewhat from *Chicago, Burlington & Quincy Ry. Co.* v. *Drainage Commissioners,* 200 U. S. 561, just decided. In that case we held it to be the duty of the railway company, at its own cost, to remove the bridge, culvert, timbers, and stones which it placed in Rob Roy creek, and which prevented the execution of the plan devised by the Drainage Commissioners. But the Commissioners demanded that more be done; for, their plan contemplated that earth outside of the railroad bridge and culvert be removed, in order that the channel be enlarged, widened and deepened. But in that improvement the railway company had no interest. It was not responsible for the inadequacy of the original channel of Rob Roy creek for the system of drainage adopted by the Commissioners. Its only duty, and the only burden imposed upon it, was to remove, at its own cost, the obstructions placed by it in the creek, and which stood in the way of the proposed system of drainage. In the case before us the public demands nothing to be done by the railroad company except to remove the obstruction which itself placed and maintains in the river under the condition that navigation should not at any time be thereby in-

terrupted. The removal of such obstruction is all that is needed to protect navigation. So that whatever cost attends the removal of the obstruction must be borne by the railroad company. The condition under which the company placed its tunnel in the river being met by the company, the public has no further demands upon it. This cannot be deemed a taking of private property for public use or a denial of the equal protection of laws within the meaning of the Constitution, but is only the result of the lawful exercise of a governmental power for the common good. This appears from the authorities cited in *Chicago, Burlington & Quincy R. R. Co.* v. *Drainage Com'rs, supra,* just decided.[1] The state court has well said that to maintain the navigable character of the stream in a lawful way is not, within the meaning of the law, the taking of private property or any property right of the owner of the soil under the river, such ownership being subject to the right of free and unobstructed navigation. *People* v. *West Chicago Street R. R. Co.,* 203 Illinois, 551, 557. What the city asks, and all that it asks, is that the railroad company be required, in the exercise of its rights and in the use of its property, to respect the public needs as declared by competent authority, upon reasonable grounds, to exist. This is not an arbitrary or unreasonable demand. It does not, in any legal sense, take or appropriate the company's property for the public benefit, but only insists that the company shall not use its property so as to interrupt navigation.

Further discussion of the general question will be found in

---

[1] *Transportation Co.* v. *Chicago,* 99 U. S. 635, 642; *Mugler* v. *Kansas,* 123 U. S. 623, 669; *N. Y. & N. E. Railroad Co.* v. *Bristol,* 151 U. S. 556, 561; *Chicago, Burlington and Quincy R. R. Co.* v. *Chicago,* 166 U. S. 226, 252; *Gibson* v. *United States,* 166 U. S. 269, 271, 276; *Scranton* v. *Wheeler,* 179 U. S. 141, 164; *New Orleans Gas Light Co.* v. *Drainage Commission,* 197 U. S. 453; *Mills* v. *United States,* 46 Fed. Rep. 738; *United States* v. *Lynch,* 188 U. S. 445; *Bedford* v. *United States,* 192 U. S. 217; *Ohio & Miss. R. R. Co.* v. *McClelland,* 25 Illinois, 140, 144; *Kankakee & Seneca R. R. Co.* v. *Horan,* 131 Illinois, 288; *Village of Carthage* v. *Frederick,* 122 N. Y. 268; *Sedgwick's Const. & Stat. Law,* 313, 320.

*Chicago, Burlington & Quincy. R. R. Co.* v. *Drainage Com'rs, supra,* just decided.   We need not repeat all said in the opinion in that case on this question.

Another matter requires notice.   The railroad company con-tends that the city had no power to require or authorize any changes in the bed of the river without the approval of the Secretary of War.   River and Harbor Act of 1899, § 10; 30 Stat. 1151.   The same act contains directions for the improve-ment of Chicago river.   Construing all the provisions together, we think it clear that when Congress declared in the River and Harbor Act of 1899, under the heading of "Improving Chicago river in Illinois," p. 1156, that "all the work of removing and reconstructing bridges and piers and lowering tunnels necessary to permit a navigable channel" with the prescribed "project" depth of twenty-one feet in Chicago river should be done by the city, without expense to the United States, it meant to give the assent of the United States to any work done by the city towards accomplishing the end which the Government had in view.   The state court properly said that "the city has power, under its charter, to deepen the channel, and as a preliminary to doing so, to require this tunnel to be lowered or removed, and the act of Congress permits it to proceed, so far as the low-ering of the tunnel is concerned."

As showing that the action taken by the city of Chicago is in accordance with the will of Congress, we may refer to the act of Congress of April 27, 1904, relating to certain tunnels under Chicago river, including the particular tunnel here in question. That act provides: "That the tunnels under the Chicago river in the State of Illinois at La Salle street, Washington street, and near Van Buren street, in the city of Chicago, in said State of Illinois, are, and each of them is hereby, declared to be, as now constructed, an unreasonable obstruction to the free nav-igation of said Chicago river, and each of said tunnels is hereby declared to be a public nuisance.   And it shall be the duty of the Secretary of War to give notice to the persons or corpora-tions owning or controlling said tunnels, or any of them, so to

alter the same as to render navigation over said tunnels free,
easy, and unobstructed, and in giving such notice he shall
specify the changes recommended by the Chief of Engineers
that are needed to be made in order that said tunnels, or any
of them, shall not thereafter be an obstruction to navigation,
and shall prescribe in each case a reasonable time in which to
make said changes. If at the expiration of such time such
changes have not been made, the Secretary of War shall forth-
with notify the United States District Attorney for the North-
ern District of Illinois, in which said tunnels are situated, to
the end that the criminal proceedings hereinafter prescribed
may be taken. If the person or persons, corporation or cor-
porations, owning or controlling any of the said tunnels shall,
after receiving notice to that effect, as hereinbefore required,
from the Secretary of War, and within the time prescribed by
him, fail or refuse to remove the same or to make the changes
specified in the notice of the Secretary of War, such person or
persons, corporation or corporations, shall be deemed guilty of
a misdemeanor, and on conviction thereof shall be punished by
a fine not exceeding ten thousand dollars; and each and every
month such person or persons, corporation or corporations,
shall remain in default in respect to the removal or alteration
of such tunnel shall be deemed a new offense and subject the
person or persons, corporation or corporations, so offending to
the penalty herein prescribed: *Provided,* That in any case aris-
ing under the provisions of this act an appeal or writ of error
may be taken from the District Court or from the Circuit Court
direct to the Supreme Court either by the United States or by
the defendants." 33 Stat. 314. For some reason, not ex-
plained in the record, no allusion was made to this act in the
opinion of the Supreme Court of Illinois, nor is it alluded to in
in the briefs of counsel. That act, it seems to the court, em-
phasizes and strengthens the views expressed in this opinion,
and tends to support the conclusions reached.

For the reasons we have stated, and in conformity with the
principles announced in *Chicago, Burlington & Quincy R. R.*

*Co.* v. *Drainage Com'rs,* the judgment of the Supreme Court must be affirmed.

*It is so ordered.*

MR. JUSTICE HOLMES concurs in the judgment, upon the authority of *Chicago, Burlington & Quincy R. R. Co.* v. *Drainage Commissioners,* 200 U. S. 561.

THE CHIEF JUSTICE, MR. JUSTICE BREWER, MR. JUSTICE WHITE and MR. JUSTICE McKENNA, dissent.