## MARGARET J. FISH v. CHICAGO GREAT WESTERN RAILROAD COMPANY.[1]

May 15, 1914.

Nos. 18,422—(41).

**Bridge authorized by Federal government — injury to riparian owner.**

 Where the Federal government, in the exercise of its authority to control and regulate commerce and navigation, sanctions the erection of a railroad bridge across a navigable river, and subsequently the railroad company, by and according to its direction, proceeds to construct a fender in the river to guide water craft through the draw span of the bridge, a riparian owner in front of whose property the fender will be located and whose access to the main channel of the river will thereby be interfered with, but none of his fast property taken, is neither entitled to compensation as for a taking of his property nor has any remedy in the premises; and this, whether the fender be regarded as an integral part of the bridge or as an aid to navigation necessitated by the previous erection thereof, the injury in either case being merely consequential upon the exercise of the paramount power of Congress over commerce and navigation, subject to which all riparian rights in, to, or over navigable waters, or in the lands beneath them, are originally acquired and subsequently held.

Action in the district court for Ramsey county to exclude defendant and its servants from plaintiff's premises on Raspberry Island in the Mississippi river, from the water in front of the premises and be-

[1] Reported in 147 N. W. 431.

---

Note.—The authorities on the question of the right of action by owner of upland for interference with access to navigable water are reviewed in notes in 40 L.R.A. 593; 67 L.R.A. 842; and 22 L.R.A.(N.S.) 345.

tween the premises and the channel of the Mississippi river, and to require defendant to remove certain obstructions placed in the river in front of the premises, to enjoin defendant from entering upon them and for $1,000 damages. Defendant alleged that its railroad bridge and piling was being constructed under license given by acts of Congress and the legislature of the state and in accordance with plans approved by the War Department; that the plans for the same were prepared and fixed by the United States Engineers' office, and defendant received positive orders from that office of the War Department to construct the piling and fender strictly in accordance with such plans, and alleged that the piling and fender were necessary for the proper navigation of the Mississippi river at that point; that the same were being constructed solely in the interests of navigation and commerce and that the court had no jurisdiction or authority to remove the same. The case was tried before Dickson, J., who made findings and granted plaintiff a permanent injunction, excluding defendant and its servants from the premises of plaintiff and the water in front of and between them and the channel of the Mississippi river, and ordered defendant to remove all the piles already placed in the river in front of the premises. Defendant's motions for amended findings and for a new trial were denied. From the order denying the motions, defendant appealed. Reversed with directions to dismiss the action.

*Briggs, Thygeson & Everall,* for appellant.
*John F. Fitzpatrick,* for respondent.


PHILIP E. BROWN, J.

Appeal by defendant from an order denying its motion to amend the findings and for a new trial, in an action wherein defendant was enjoined from maintaining piling between plaintiff's premises and the channel of the Mississippi river.

The material facts are undisputed, and may thus be stated: Plaintiff owned and was in possession of a portion of Raspberry Island, in and fronting on the Mississippi river, in St. Paul. Defendant, owning a part of the island lying down stream and adjoining plaintiff's premises, erected, under authority of Congress, a railroad

bridge across the river and over that portion of the island owned by it. Thereafter the Federal government ordered defendant to construct a fender, to aid navigation by guiding water craft towards and through the draw span of the bridge, from near one of its piers up stream for a distance of 150 feet, the same to consist of piling driven into the river bottom and boarded up. Defendant accordingly drove piles in the river above the bridge pier and in front of plaintiff's property. The shore line of the latter was about 115 feet from the pier, 86 feet from the lower end of the piling, and 78 feet from the upper end. The water where the piles were placed was about 10 feet deep, such depth continuing up to a point close to the shore of plaintiff's premises and thus, except for the piling, furnishing a good landing place for water craft of all kinds. Immediately up stream from the piling and proposed fender the water was much more shallow, being only four and seven-tenths feet deep at low water. The effect of the completed structure, therefore, would be to make a continuous fence for a distance of 150 feet in front of plaintiff's premises and nearly parallel to its shore line, all within the line of the thread of the stream on plaintiff's side of the river, thus materially and injuriously affecting the use of her property, but in nowise interfering with or encroaching upon her fast land itself.

The various contentions of the parties all center upon the single question as to whether the fender can be constructed and maintained without compensating plaintiff for the resulting injury to her riparian or other rights, which she claims are invaded by the structure. In Archer v. Greenville Sand & Gravel Co., decided April 6, 1914, 233 U. S. 60, 68, 34 Sup. Ct. 567, 58 L. ed. —, the Supreme Court of the United States reiterated its previous holding to the effect that it is a question of local law whether title to beds of navigable rivers of the United States is in the state in which the streams are situated or in the owners of the lands bordering thereon; and for the purposes of this case we will assume plaintiff's fee ownership of that portion of the river's bottom extending from the front of her property to the middle of the stream. As we proceed with the discussion, however, it will appear that the matters involved present Federal ques-

tions, thus rendering Federal decisions thereon peculiarly apposite and the desirability of conformity thereto manifest.   Plaintiff founds her claim that the fender is an unlawful invasion of her property rights largely upon the doctrine announced in Brisbine v. St. Paul & Sioux City R. Co. 23 Minn. 114, 129, where the following language was used in course of discussion of riparian rights:

"What these rights are, especially in regard to land acquired originally from the United States, and bordering, as this does, upon the Mississippi river, we regard as fully and correctly settled by the Federal Supreme Court.   Dutton v. Strong, 1 Black, 23 [17 L. ed. 29]; St. Paul & P. R. Co. v. Schurmeier, 7 Wall. 272 [19 L. ed. 74]; Yates v. City of Milwaukee, 10 Wall. 497 [19 L. ed. 984]. According to the doctrine of these decisions, the plaintiff possessed the right to enjoy free communication between his abutting premises and the navigable channel of the river, to build and maintain, for his own and the public use, suitable landing-places, wharves, and piers, on and in front of his land, and to extend the same therefrom into the river, to the point of navigability, even though beyond low-water mark, and to this extent exclusively to occupy, for such and like purposes, the bed of the stream, subordinate and subject only to the navigable rights of the public, and such needful rules and regulations for their protection as may be prescribed by competent legislative authority.   The rights which thus belonged to him, as riparian owner of the abutting premises, were valuable property rights, of which he could not be divested without consent, except by due process of law, and, if for public purposes, upon just compensation.   Yates v. City of Milwaukee, 10 Wall. 497" [19 L. ed. 984].

But this pronouncement, depending as it does, upon the Federal cases cited, has been materially modified and restricted by the court whose decisions are relied upon for foundation.   In Scranton v. Wheeler, 179 U. S. 141, 21 Sup. Ct. 48, 45 L. ed. 126, a case involving the question whether plaintiff therein was entitled, by reason of construction of a pier, to compensation for the destruction of his right, as riparian owner, of access from his land to the navigable part of the river immediately in front of it, Mr. Justice Harlan said, at page 157 [21 Sup. Ct. 55, 45 L. ed. 126]:

"It is said that he is so entitled in virtue of the decision in Yates v. Milwaukee, 10 Wall. 497, 504, 505 [19 L. ed. 984]. The report of that case shows that Yates owned a wharf on a navigable river within the limits of the city of Milwaukee and that the city by an ordinance declared the wharf to be a nuisance and ordered it to be abated. There was no proof whatever in the record that the wharf was in fact an obstruction to navigation or a nuisance except the declaration to that effect in the city ordinance; and Yates brought suit to enjoin interference with it by the city. This court held that the mere declaration by the city that Yates' wharf was a nuisance did not make it one, saying: 'It is a doctrine not to be tolerated in this country that a municipal corporation, without any general laws either of the city or of the state, within which a given structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself.' This, as this court said in Shively v. Bowlby, 152 U. S. 1, 40, [14 Sup. Ct. 548, 38 L. ed. 331,] was quite sufficient to dispose of the case in Yates' favor, and indicated the point adjudged. A proper disposition of the case required nothing more to be said. But the opinion of the court went further, and after observing, upon the authority of Dutton v. Strong, 1 Black, 23 [17 L. ed. 29] and Railroad Co. v. Schurmeier, 7 Wall. 272 [19 L. ed. 74,] that a riparian owner is entitled to access to the navigable part of the river from the front of his lot, subject to such general rules and regulations as the legislature might prescribe for the protection of the rights of the public, said: 'This riparian right is property, and is valuable, and though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired. It is a right of which, when once vested, the owner can only be deprived in accordance with established law, and, if necessary that it be taken for the public good, upon due compensation.' The decision in Yates v. Milwaukee cannot be regarded as an adjudication upon the particular point involved in the present case. That, as we have seen, was a case in which the riparian owner had in conformity with law erected a wharf in front of his upland in order to have access to navigable water. The city of Milwaukee

attempted arbitrarily and capriciously to destroy or remove the wharf that had lawfully come into existence and was not shown, in any appropriate mode, to have been an obstruction to navigation. It was a case in which a municipal corporation intended the actual destruction of tangible property belonging to a riparian owner and lawfully used by him in reaching navigable water, and not, like this, a case of the exercise in a proper manner of an admitted governmental power resulting indirectly or incidentally in the loss of the citizen's right of access to navigation—a right never exercised by him in the construction of a wharf before the improvement in question was made by the Government."

The observations in the Brisbine Case, therefore, must, at least as applied to the facts of the present case, be taken as limited by Scranton v. Wheeler, supra.

What, then, are the rights of the plaintiff in the premises, and especially in regard to compensation? This question has been answered by the Supreme Court of the United States in analogous cases. Said Mr. Justice Harlan, in Scranton v. Wheeler, supra, 179 U. S. at pages 163, et seq. [21 Sup. Ct. 57, 45 L. ed. 126]:

"Whether the title to the submerged lands of navigable waters is in the state or in the riparian owners, it was acquired subject to the rights which the public have in the navigation of such waters. The primary use of the waters and the lands under them is for purposes of navigation, and the erection of piers in them to improve navigation for the public is entirely consistent with such use, and infringes no right of the riparian owner. Whatever the nature of the interest of a riparian owner in the submerged lands in front of his upland bordering on a public navigable water, his title is not as full and complete as his title to fast land which has no direct connection with the navigation of such water. It is a qualified title, a bare technical title, not at his absolute disposal, as is his upland, but to be held at all times subordinate to such use of the submerged lands and of the waters flowing over them as may be consistent with or demanded by the public right of navigation. In Lorman v. Benson,[1] above cited,

[1] [8 Mich. 18, 77 Am. Dec. 435]

the Supreme Court of Michigan, speaking by Justice Campbell, declared the right of navigation to be one to which all others were subservient. The learned counsel for the plaintiff frankly states that compensation cannot be demanded for the *appropriation* of the submerged lands in question and that the United States under the power to regulate commerce has an unquestioned right to *occupy* them for a lawful purpose and in a lawful manner. This must be so—certainly in every case where the use of the submerged lands is necessary or appropriate in improving navigation. But the contention is that compensation must be made for the loss of the plaintiff's access from his upland to navigability incidentally resulting from the occupancy of the submerged lands, even if the construction and maintenance of a pier resting upon them be necessary or valuable in the proper improvement of navigation. We cannot assent to this view. If the riparian owner cannot enjoy access to navigability because of the improvement of navigation by the construction away from the shore line of works in a public navigable river or water, and if such right of access ceases alone for that reason to be of value, there is not, within the meaning of the Constitution, a *taking* of *private* property for public use, but only a consequential injury to a right which must be enjoyed, as was said in the Yates case, 'in due subjection to the rights of the public'—an injury resulting incidentally from the exercise of a governmental power for the benefit of the general public, and from which no duty arises to make or secure compensation to the riparian owner. The riparian owner acquired the right of access to navigability subject to the contingency that such right might become valueless in consequence of the erection under competent authority of structures on the submerged lands in front of his property for the purpose of improving navigation. When erecting the pier in question, the Government had no object in view except, in the interest of the public, to improve navigation. It was not designed arbitrarily or capriciously to destroy rights belonging to any riparian owner. What was done was manifestly necessary to meet the demands of international and interstate commerce. In our opinion, it was not intended that the paramount authority of Congress to improve the navigation of the public navigable waters of

the United States should be crippled by compelling the Government to make compensation for the injury to a riparian owner's right of access to navigability that might incidentally result from an improvement ordered by Congress. The subject with which Congress dealt was navigation. That which was sought to be accomplished was simply to improve navigation on the waters in question so as to meet the wants of the vast commerce passing and to pass over them. Consequently the agents designated to perform the work ordered or authorized by Congress had the right to proceed in all proper ways without taking into account the injury that might possibly or indirectly result from such work to the right of access by riparian owners to navigability."

Again, in United States v. Chandler-Dunbar Co. 229 U. S. 53, 62, 33 Sup. Ct. 667, 671, 57 L. ed. 1063, Mr. Justice Lurton, upon review of previous decisions of that court, said:

"This title of the owner of fast land upon the shore of a navigable river to the bed of the river, is at best a qualified one.  *  *  * It is subordinate to the public right of navigation, and however helpful in protecting the owner against the acts of third parties, is of no avail against the exercise of the great and absolute power of Congress over the improvement of navigable rivers. That power of use and control comes from the power to regulate commerce between the States and with foreign nations. It includes navigation and subjects every navigable river to the control of Congress. All means having some positive relation to the end in view which are not forbidden by some other provision of the Constitution, are admissible. If, in the judgment of Congress, the use of the bottom of the river is proper for the purpose of placing therein structures in aid of navigation, it is not thereby taking private property for a public use, for the owner's title was in its very nature subject to that use in the interest of public navigation. If its judgment be that structures placed in the river and upon such submerged land, are an obstruction or hindrance to the proper use of the river for purposes of navigation, it may require their removal and forbid the use of the bed of the river by the owner in any way which in its judgment is injurious to the dominant right of navigation. So, also, it may permit the

construction and maintenance of tunnels under or bridges over the river, and may require the removal of every such structure placed there with or without its license, the element of contract out of the way, which it shall require to be removed or altered as an obstruction to navigation."

Thus it will be seen that in the Supreme Court of the United States the doctrine of Scranton v. Wheeler, supra, still obtains in its broadest application as sustaining the supreme and paramount authority of the Federal government over navigable waters in the interest of commerce between the states; and reference to intervening decisions of that court discloses an unwavering adherence thereto. See West Chicago St. R. Co. v. City of Chicago, 201 U. S. 506, 26 Sup. Ct. 518, 50 L. ed. 845; Union Bridge Co. v. U. S. 204 U. S. 364, 27 Sup. Ct. 367, 51 L. ed. 523; Monongahela Bridge Co. v. U. S. 216 U. S. 177, 30 Sup. Ct. 356, 54 L. ed. 435; Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. ed. 570. Such also is the doctrine of many state courts. See 2 L.R.A. 540, note; 40 Id. 603, note; Home for Aged Women v. Com. 202 Mass. 422, 89 N. E. 124, 24 L.R.A.(N.S.) 79; 29 Cyc. 299. In our opinion, furthermore, it rests upon fundamental reason and cannot be assailed without striking at the basic foundation of the Federal commerce power. Hence we not only feel constrained but are content to follow it, notwithstanding a respectable array of authority more or less to the contrary. See 40 L.R.A. 596, notes; 67 Id. 842, note; 22 Id. (N. S.) 345.

Plaintiff insists, however, that the fender is not an improvement of navigation, but merely a mitigation of an obstruction theretofore created by the bridge. This contention has been adversely disposed of and its force destroyed by the determination of Federal authority that the fender is necessary for purposes of navigation, and no judicial question is left open in this regard. In United States v. Chandler-Dunbar Co. supra, it is said at page 64, of 229 U. S. [33 Sup. Ct. 672, 57 L. ed. 1063]:

"So unfettered is this control of Congress over the navigable streams of the country that its judgment as to whether a construction in or over such a river is or is not an obstacle and a hindrance to

navigation, is conclusive. Such judgment and determination is the exercise of legislative power in respect of a subject wholly within its control."

And, as pointed out in this connection in the same case, the Federal Supreme Court, in Pennsylvania v. Wheeling & Belmont Bridge Co. 18 How. 421, 430, 15 L. ed. 435, refused to issue a mandate for the carrying out of its own prior decree for the removal of an obstruction to navigation which, in the meantime, had been legalized by Congress.

The authority of Congress to empower defendant to erect the bridge cannot be doubted, and it is equally certain that, within the scope of decisions cited, if with Federal sanction, in the original building of the bridge, one or more of its piers had been placed in the river, between lines projected from the confines of plaintiff's fast property, plaintiff would not have been entitled to compensation, even if thereby the same area were occupied as that covered by the fender. The same result must, therefore, follow the subsequent construction, under Federal authority and direction, of the fender in question as necessary in the interests of navigation.

Finally, the power of the Federal government in the premises having been established, the whole case is ruled by the doctrine that whenever one, by command or authorization of law, does a thing from which another sustains injury, he is without liability to the latter who must endure, uncompensated, what thus befalls him. Bishop, Noncontract Law, § 111. Which principle, says Mr. Bishop in section 114, is from its nature universal and unqualified. Plaintiff, therefore, stands in no better position than if he were proceeding directly against the United States. In short, following Federal decisions, we hold that the United States had lawful authority to construct and maintain the fender in front of plaintiff's fast land, under its power to control commerce and navigation, without acquiring any right so to do from plaintiff or compensating her for the damage occasioned thereby to her riparian or other rights, and further that defendant, acting pursuant to direction from the same authority, has equal right.

Order reversed with direction to dismiss the action.