JOHANNA KUSCHKE *vs*. CITY OF ST. PAUL.

| 45 | 225 |
| 85 | 238 |

January 12, 1891.

**St. Paul—Streets—Condemnation for Slopes.**—The charter of the city of St. Paul authorizes the city to acquire, by condemnation, easements for slopes in grading streets.

**Eminent Domain — Personal Notice.**—To make proceedings for taking private property for public use valid, personal notice to the owner is not a constitutional requisite.

**Same—Sufficiency of Description in Notice.**—A description of the land to be taken in the notice required by the charter of defendant is sufficient, if, from what it contains, and the facts which the owner is charged with notice of, he is apprised of what property is proposed to be taken.

**Same—Abutters Charged with Notice of Established Street Grade.** The owners of lots fronting on a street are charged with notice of the street grades, when established as provided in defendant's charter, and the profiles are filed as therein required.

**Same—Abandonment of Easement for Slope.** — Although an easement for a slope for a street grade may be abandoned by defendant, an intention to abandon will not be established by the mere fact that defendant built a retaining wall along the street line.

Appeal by plaintiff from an order of the district court for Ramsey county, *Otis*, J., presiding, refusing a new trial after verdict directed for defendant in an action to recover $800 damages resulting from excavation along a street in front of plaintiff's lot.

*D. D. Williams* and *H. C. McCartey*, for appellant.

*O. E. Holman*, for respondent.

GILFILLAN, C. J.   This action is for removing the lateral support to the soil of plaintiff's lot fronting on Dearborn street, in the city of St. Paul, by removing, to the depth of eight feet, the earth from said street for the purpose of grading the same.   The defence of the city, as we understand it from the answer, is that it acquired the right to remove such lateral support by acquiring an easement in the lot for the purpose of a slope, under the provisions of its charter.   We do not understand it to be claimed by plaintiff that if the city, by valid

proceedings, has acquired the easement for a slope as claimed by it, the defence is not made out. To make the defence, the city must show—*first*, legislative authority to take the easement; *second*, that, pursuant to such authority, it took and carried through such proceedings as resulted in vesting the easement in it. The authority of the city, in such case, rests upon section 1, tit. 1, *c*. 7, of the city charter, (Sp. Laws 1874, p. 52,) as amended by Sp. Laws 1887, *c*. 7, p. 332. That section authorizes the city to condemn land for various public uses, among others, "to condemn an easement in land for the construction of slopes for cuts and fills upon real property abutting upon any street, lane, alley, or highway now ordered to be, or such as shall hereafter be ordered to be, opened, extended, altered," etc. This language is certainly open to criticism for vagueness in several particulars ; but we think its fair import is that, when the city desires to grade a street so that the public shall have the use of it to its full width, if it be necessary, in the case of a fill, to make the base of the embankment wider than the surface, the city may take, by condemnation, an easement in so much of the abutting lots as may be necessary to make the base of proper width; and in the case of a cut, if it be necessary to remove the lateral support to the soil of abutting lots, it may so acquire an easement for that purpose in so much of the lots as may be affected by removing the lateral support. How much it may be necessary to take in either case will depend on the slope the soil will naturally take in the one case at the side of the embankment, in the other case on the lot from its surface to the street as graded.

The appellant objects to the provisions of the charter regulating the proceedings for condemnation in such cases, that they are unconstitutional, in that they do not provide for personal notice to owners. The charter provides for notice by publication. In such cases, personal notice is not essential to the validity of the proceedings. The legislature may provide for constructive or substituted notice. Mills, Em. Dom. § 94.

Aside from the question whether the clause we have quoted from section 1 confers authority on the city to acquire by condemnation an easement in abutting lots, for the purpose of slopes rendered neces-

sary by grading streets above or below the surface of such lots, the principal question made here, as also in the court below, is as to the sufficiency of the description, in the published notice of the condemnation proceedings, of the land proposed to be taken. Section 8, tit. 1, *c.* 7, (Sp. Laws 1887, p. 335,) prescribes what the notice shall contain, and that it "shall describe the land to be condemned as near as may be done by general description." Of course, such description must be sufficiently definite to apprise the owner what and how much of his land is to be condemned. The notice in this case was for "condemning and taking an easement on the land adjoining and on the line of Dearborn street, from Bidwell street to State street, for making and maintaining slopes one and one-half $(1\frac{1}{2})$ feet on said land for every foot cut or filled, necessary for the grading of Dearborn street," etc. If this notice had specified the depth of the cut, or height of the fill, below or above the surface of plaintiff's lots, then how much was proposed to be taken would be a mere matter of calculation, and according to the maxim, *id certum est, etc.,* the description would be sufficient. The absence from the notice of the necessary elements to make it certain raises a difficulty upon which the court below seems to have hesitated a good deal, though it finally held the description sufficient. We have felt the same doubt and hesitancy that the court below did, but we think the court was right in sustaining the description. No claim is made but that the grading of Dearborn street, mentioned in the notice, was to be understood as a grading to bring it to a grade line previously established pursuant to the charter. Section 1, tit. 3, of the same chapter (Sp. Laws 1887, p. 366) makes it the duty of the common council to cause to be established the grades of all streets, sidewalks, and alleys, and to cause accurate profiles thereof to be made, one to be filed in the office of the register of deeds of the county, and one to be kept in the office of the engineer of the board of public works. The establishing of the grades confers rights on the owners of property fronting on such grades, so that they cannot be changed without payment of damages, if any, caused by the change. Title 3. When the grade is established, as provided in section 1, and the profiles are filed, all lots fronting the street are bound by it, and the owners of, or persons interested in,

such lots, are charged with notice of the grade as so established, just as any one is chargeable with constructive notice of whatever legally binds his estate. It is not denied, and we understand it was proved, that, prior to commencing the condemnation proceedings, the grade of Dearborn street was legally established, and the profiles duly filed. The notice was not for the information of strangers to the property fronting on the street, but of the owners of and persons interested in it. If it contained enough, in connection with what they already had notice of, to apprise them what property was to be taken, the purpose of notice was accomplished.

The board of public works having acquired jurisdiction to assess the damages for the condemnation, any error in making such assessment is to be corrected by appeal. Chapter 7, tit. 1, §§ 16, 17, (Sp. Laws 1887, pp. 338–9.) That would be the case where, as is charged here, they omit to include, in the amount assessed for taking the land, the damage to a building standing on it. The damage to the building is, under section 12, to be assessed as part of the damage for taking the land, except where the land is owned by one and the building by another, when the damage to the building is to be assessed separately. That is not this case.

There can be little doubt that the city may abandon an easement acquired for a slope for a street grade, but an intention to do so would not be established alone by the fact that it constructed a retaining wall. The construction of such wall, if permanent in its character, might furnish evidence of an intent to abandon the easement; but, without such intent, it would not have that effect.

Order affirmed.

NOTE. A motion for a reargument of this case was denied February 6, 1891.