## OTTER TAIL POWER COMPANY v. EDWARD A. BRASTAD.[1]

February 19, 1915.

Nos. 18,484—(31).

**Public service corporation — electric light and power.**

1. The furnishing of electric light and power to the public is a public service, and land or water taken to forward such an enterprise is taken for a public use.

**Eminent domain — petition to condemn — pleading authority.**

2. It is not necessary that the petition of a corporation in condemnation proceedings should allege that the proceeding was authorized by its board of directors.

**Interference with navigation.**

3. A public service corporation authorized to condemn private property cannot interfere with the navigable capacity of any navigable stream unless authorized by statute, but it may take the private rights of property of the riparian owner upon compliance with the Constitution and laws of the

[1] Reported in 151 N. W. 198.

---

Note.—On the question as to whether the taking of property for production and distribution of light by electricity is a public purpose, see note in 22 L.R.A. (N.S.) 137.

state, and upon making just compensation, whether the stream be navigable or not.

**Eminent domain — description in petition.**

4. A 'description of the right to be taken as "a portion of the waters of the Otter Tail river * * * leaving at all times in the channel of said river sufficient water for all public and domestic uses," is a sufficiently definite description.

**New trial — inadequate damages.**

5. The damages assessed are not so inadequate as to require the granting of a new trial or any disturbance of the verdict.

In the matter of the application of Otter Tail Power Co. to the district court for Otter Tail county, to condemn certain land and a perpetual easement of diverting water of the Otter Tail river from flowing past certain land, Edward A. Brastad appeared, filed objections to the appointment of commissioners, and appealed from the award of the commissioners. The matter was heard before Taylor, J., and a jury which assessed his damages at $425. His motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, he appealed. Affirmed.

*Gunderson & Leach,* for appellant.

*John A. Brown* and *Brown & Guesmer,* for respondent.

HALLAM, J.

This is an appeal from a judgment in proceedings to take water from the Otter Tail river under power of eminent domain. Appellant owns land abutting upon this stream.

1. It is contended the petition does not show that the condemnation is for an exclusively public use. We think it does. The petition alleges that respondent corporation was organized for the purpose of acquiring, constructing and operating dams, reservoirs, power plants and other instrumentalities in order to furnish electric power for public use and to supply the public with electric light and heat. It further alleges that the diversion of the waters is proposed to be made in order to improve and increase the water power furnished by the Otter Tail river for the purpose of manufacturing and furnishing electric power to the public, and that such improve-

ment and increase of said water power for the purpose aforesaid will be a public use of great value and convenience in supplying the public with such electric power. This language makes it clear that the purpose of the condemnation is a public purpose, and a public purpose alone. The furnishing of electric light and power to the public is a public service, and the use of land or water to forward such an enterprise is a public use. Minnesota Canal & Power Co. v. Koochiching Co. 97 Minn. 429, 450, 107 N. W. 405, 5 L.R.A. (N.S.) 638, 7 Ann. Cas. 1182; Minnesota Canal & Power Co. v. Pratt, 101 Minn. 197, 213, 112 N. W. 395, 11 L.R.A.(N.S.) 105; State v. Consumers Power Co. 119 Minn. 225, 137 N. W. 1104, 41 L.R.A.(N.S.) 1181, Ann. Cas. 1914B, 19; 1 Lewis, Eminent Domain, (3d ed.) § 268.

2. Another objection to the petition is that it fails to allege that the petitioner was authorized by its board of directors to institute the proceedings. The statute requires that the proceeding when taken by a corporation shall be taken "in its corporate or official name and by the governing body thereof." G. S. 1913, § 5397. It does not require the petition to in terms allege that the proceedings are authorized by the board of directors. This is matter of evidence. We know of no rule of practice or pleading that requires such allegation and we are cited to no authority that holds it necessary. The evidence makes it clear that the proceeding was prosecuted by authority of the corporation, either by original action or ratification. This is all that the case requires. 2 Lewis, Eminent Domain (3d ed.), § 505; Tennessee Cent. R. Co. v. Campbell, 109 Tenn. 655, 73 S. W. 112; Milwaukee L. H. & T. Co. v. Milwaukee Northern R. Co. 132 Wis. 313, 112 N. W. 663; State v. Superior Court, 44 Wash. 108, 87 Pac. 40.

3. Appellant contends that this stream is a public or navigable stream. It is not important in this case whether it is or not. If this be a public or navigable stream, that fact cannot help the appellant. A public service corporation authorized to condemn private property for public uses may not, under the right of eminent domain, interfere with the navigable capacity of any of the navigable waters of the state, unless such interference is authorized by statute. But

128 M.—27.

it may take the private rights of property of the riparian owner upon complying with the Constitution and the laws of the state, and upon making just compensation therefor. Hanford v. St. Paul & Duluth R. Co. 43 Minn. 104, 111, 42 N. W. 596, 44 N. W. 1144, 7 L.R.A. 722; Minnesota Canal & Power Co. v. Koochiching Co. 97 Minn. 429, 443, 107 N. W. 405, 5 L.R.A.(N.S.) 638, 7 Ann. Cas. 1182; Minnesota Canal & Power Co. v. Pratt, 101 Minn. 197, 218, 112 N. W. 395, 11 L.R.A.(N.S.) 105; Minnesota Canal & Power Co. v. Fall Lake Boom Co. 127 Minn. 23, 148 N. W. 561; Kaukauna Water Power Co. v. Green Bay & Miss. Canal Co. 142 U. S. 254, 12 Sup. Ct. 173, 35 L. ed. 1004; St. Anthony Falls Water Power Co. v. St. Paul Water Commissioners, 168 U. S. 349, 18 Sup. Ct. 157, 42 L. ed. 497, affirming 56 Minn. 485, 58 N. W. 33; Farnham, Waters & Water Rights, § 85; Gould, Waters, § 246; Lewis, Eminent Domain, §§ 87, 88, 93.

4. It is contended that the petition is too vague, indefinite and uncertain as to the property of rights which the petitioner seeks to condemn. The petition alleges that "petitioner desires and purposes to divert a portion of the waters of the Otter Tail river, * * * leaving at all times in the channel of said river sufficient water for all public and domestic uses; to conduct the said waters from said point of diversion by means of a canal and tunnel" to a reservoir, thence through a pipe line to the power house of petitioner, thence again returned to the channel of the river below appellant's land. There is nothing to show how much water in depth will be left in the river, nor how much in cubic contents will be taken out.

Undoubtedly the description of the land to be taken must be certain and definite enough so that it may be determined where lies the dividing line between what is to be taken and what is to be left remaining. To that end the description of the land or rights taken should be made as definite as would be necessary in a deed. Mathias v. Drain Comr. 49 Mich. 465, 13 N. W. 818; Rice v. Danville, L. & N. T. R. Co. 37 Ky. 81. There is no doubt that the description here in question would be sufficient in a deed. Moore & Roy v. Wilder, 66 Vt. 33, 28 Atl. 320.

In condemnation proceedings something more than this is neces-

sary.  Since in such proceedings the compensation is fixed, not by agreement of the parties, but by an assessment made by commissioners, and on appeal by a court and jury, it is necessary that the description should be definite enough so that the commissioners and the court and jury may fairly fix or estimate the compensation to be allowed.  It is contended the words, "a portion of the waters of the Otter Tail river * * * leaving at all times in the channel of said river sufficient water for all public and domestic uses," are so indefinite that commissioners could not fairly estimate appellant's damages.  We think the description is sufficient for that purpose.

It must be borne in mind that the material consideration is, not the benefit to be derived by the petitioner, but the damages sustained by the landowner.  "It is the damage caused by imposing the easement on the land which the owner is entitled to receive."  Robbins v. St. Paul, Stillwater & T. F. R. Co. 22 Minn. 286.  It makes little or no difference what benefit the petitioner may receive (West Virginia R. Co. v. Gibson, 94 Ky. 234, 21 S. W. 1055; Moulton v. Newburyport Water Co. 137 Mass. 163, 167); and it is of little consequence whether or not the description furnishes data for an estimate of the value of such benefit.  It seems to us that the language used in this case makes the estimate of the damage appellant has sustained as easily practicable as any language that could well be used.  Where the right to appropriate a portion only of the water of a stream is taken, in the nature of things the amount taken or left cannot be fixed with mathematical certainty, but unless we are prepared to hold that the party seeking to condemn the right to take water from a stream must take all or none, we must be content with a description that approximates certainty.  We cannot hold that the petitioner must take all of the water in this stream merely for the sake of greater certainty of description, when in fact it does not want to use it all.  The proceedings might of course have required the leaving of a certain stage of water in the river, but it is manifest that in a stream of this sort this test would not be easy of application.  They might have authorized the taking of a certain quantity of water in cubic feet, but this would leave wholly uncertain the amount that would be left, for the natural flow of water in such a

stream varies greatly, and the amount left after taking out a quantity fixed in cubic feet would vary accordingly. The taking of a fixed amount at all times might have involved greater damage than the petitioner had any desire to cause.

But these considerations are collateral and incidental only. The real question is, not whether this description employs the most certain language possible to be used, but whether it employs language reasonably sufficient for the purpose. It seems to us that it does. It gives a right to divert a portion of the waters of this stream, "leaving at all times in the channel of said river sufficient water for all public and domestic uses." The provision for "public uses" compels the petitioner to leave at all times in the stream sufficient water to serve all public uses to which the water of the stream may at any time be subject. The term "domestic" uses has a reasonably well-defined meaning. This provision requires the petitioner to leave at all times sufficient fresh running water to supply all the private uses of water and ice which may at any time be incident to the proper enjoyment of the riparian property. It seems to us that this description furnishes a practical working basis and furnishes a criterion of reasonably easy application. Weaver v. Mississippi & R. R. Boom Co. 30 Minn. 477, 16 N. W. 269, while not directly in point, tends to sustain the position we have taken. See also Kuschke v. City of St. Paul, 45 Minn. 225, 47 N. W. 786.

The cases cited by counsel for the appellant holding descriptions of water rights too indefinite, are easily distinguishable. In all of them there was uncertainty both as to the amount to be taken and also as to the amount to be left. For example, in Hayden v. State, 132 N. Y. 533, 30 N. E. 961, the canal commissioners commenced proceedings to acquire the right to take water from the outlet of Owasco lake for a feeder for the Erie canal, declaring that "the water and lands necessary for said feeder are hereby permanently appropriated." There was no limit as to the amount to be taken or as to the amount to be left, except the wholly indeterminate needs of the petitioner, and it was held that a description, to be sufficient, must be such "that the owner may know how much he has lost and what he is entitled to be compensated for. Hamor v. Bar Harbor

Water Co. 78 Me. 127, 3 Atl. 40; People v. Trustees, 137 N. Y. 88, 32 N. E. 1111; Bell Telephone Co. v. Parker, 187 N. Y. 299, 79 N. E. 1008; involve similar considerations. In Aliso Water Co. v. Baker, 95 Cal. 268, 30 Pac. 537, a complaint in an action to condemn water rights described them as "all the rights of each of the defendants whether as riparian owners or acquired by appropriation, adverse use, or prescription, except for domestic use and reasonable irrigation of their riparian lands." There is some language in the opinion which tends to sustain the contention appellant makes in this case, but the case was disposed of on the ground that the complaint was insufficient because there was no attempted description of what rights were in fact held "by adverse use, prescription, or appropriation."

5. Appellant contends that the damages awarded him are so clearly inadequate that they must have been given under the influence of passion and prejudice. The jury awarded $425. Appellant's farm is a dairy and stock farm. He has about one hundred acres of bottom hay land along the Otter Tail river. Under a top layer of sod is a few inches of sandy loam. Beneath this is a layer of coarse sand from two to four feet deep, running down it is claimed to water, and underneath this is a layer of quicksand. The theory of appellant is that the grass roots get their moisture from the water below and that the hay crop depends on a high stage of water in the river which irrigates the whole of the bottom land by a process of capillary attraction or sub-irrigation, and that the drawing of water from the river by removing this source of irrigation causes damage to his land.

The damages were hard to estimate. The cases that have come before this and other courts involving damage due to the action of water have usually been cases of excessive flowage. Cases of excessive drainage of bottom land are rare. We say this not to belittle appellant's claim, for there is credible evidence to sustain his claim of substantial damage, but rather to indicate how little guidance we have in precedent in passing upon such a claim. The jury and most of the witnesses doubtless labored under the same difficulty. The evidence as to damage took a wide range. It covers several hundred

pages of the record. No useful purpose would be served by analyzing
it in detail. There is some testimony that appellant's land was
benefited as much as $2,000, some that there was no damage. Some
witnesses who considered that appellant's property was damaged
placed his damage at $200. Several others placed it at but a few
hundred dollars; and there was testimony of others placing it at all
the way up to $5,000. The jury was doubtless composed largely
of farmers. They viewed the locality. There is evidence to sustain
their finding that appellant's damage did not exceed $425; and,
while under the evidence they might have placed it higher, we see
no possible ground for any claim of actual passion or prejudice
against this appellant and in favor of the petitioner, and we cannot
disturb the verdict.

Judgment affirmed.