## PIKE RAPIDS POWER CO. v. MINNEAP-OLIS, ST. P. & S. S. M. R. CO.*

### No. 11200.

Circuit Court of Appeals, Eighth Circuit.
Nov. 4, 1938.

*Writ of certiorari denied 59 S.Ct. 362, 83 L.Ed. —.

James G. Nye, of Duluth, Minn. (Gillette, Nye, Harries & Montague, of Duluth, Minn., on the brief), for appellant.

Henry S. Mitchell, of Minneapolis, Minn. (James L. Hetland, of Minneapolis, Minn., and Fryberger, Fulton & Boyle, of Duluth, Minn., on the brief), for appellee.

Before SANBORN, THOMAS, and BOOTH, Circuit Judges.

THOMAS, Circuit Judge.

The appellant, plaintiff below, is a power company organized for the purpose of operating and maintaining a dam or dams across the Mississippi river in the state of Minnesota for the generation of electricity for public use. The appellee, defendant below, is a railway corporation engaged in business as a common carrier in interstate commerce. Both plaintiff and defendant corporations were organized under the laws of the state of Minnesota and both were vested with the power of eminent domain.

In the spring of 1907 the defendant began grading its railway road bed on both sides of, and the construction of a bridge across, the Mississippi river at a point a few miles down the river below the town

of Pike Rapids in Morrison County, Minnesota. The plaintiff brought this suit to enjoin the defendant from proceeding with the construction of its bridge and from further trespassing upon plaintiff's property, and for damages. By appropriate allegations in its answer and in accordance with the Minnesota statutes, Mason's Minnesota Statutes 1927, § 6569, the defendant converted the action into one for condemnation.

The complaint alleged specific ownership of the land by plaintiff on both sides of the river at the point where the bridge was under construction; that plaintiff proposed to build a dam for power purposes across the river at that point; that the land had been acquired for that purpose; that an act of Congress approved June 4, 1906, 34 Stat. 209, and amended March 2, 1907, 34 Stat. 1219, had authorized the construction of the dam; that defendant with full knowledge of plaintiff's rights, purposes and intentions had unlawfully trespassed upon the premises; and that the Mississippi river is one of the public navigable rivers of the United States.

The answer admitted the acts of Congress permitting plaintiff to build its dam across the river and alleged that plaintiff had not obtained the approval of the Chief of Engineers and the Secretary of War, as required by statute, of the plans for the construction of its proposed dam; that the defendant had obtained the consent of Congress by an act approved February 1, 1907, to construct its bridge across the river, and that its plans had been properly approved. It further admitted that it had constructed a line of railway over certain lands owned by plaintiff; that plaintiff had been damaged to some extent by the taking of plaintiff's land. It alleged that defendant had constructed a temporary bridge over the river at the point described and that it intended to complete and to maintain a permanent bridge at that point as a part of its line of railway. The answer prayed that the court fix and determine the amount of damages which plaintiff was entitled to by reason of the taking of its lands and to enter judgment against defendant for such sum.

The suit was commenced in 1907. The bridge was completed and put in use the same year. The plaintiff obtained a license from the Federal Power Commission authorizing the construction of the dam in 1923. The case for various reasons not now material was not tried until 1925, and not decided by the lower court until 1938.

The bridge is supported by four piers resting upon the bed of the river below low water mark, two on either side of the center of the stream. When the dam was constructed in 1924 a short distance upstream from the bridge it developed that the tailraces of the dam diverted the current of the river in such a way as to make it necessary to reinforce the bridge piers. A question arose between the parties at that time as to which of them was liable for such damages. To avoid delays they entered into two agreements dated July 17, 1924, similar in all respects, one of which referred to the reinforcement of the two easterly piers and the other to the two on the west side of the middle of the river. By the terms of these agreements the plaintiff advanced the money, finally amounting to approximately $72,000, to pay for the work of strengthening the piers. It was further agreed that the parties would attempt to settle the following disputed matters by negotiation:

"(a) The liability or responsibility of each of the parties hereto with reference to the cost of doing all of the work of strengthening the * * * piers of said bridge in accordance with said plans and specifications;

"(b) The amount of damages to which plaintiff is entitled by reason of any taking of its property as described in the complaint which may be established, including such amount, if any, as it may be entitled to receive on account of any added expense in the construction of its dam or on account of payments which it may be required to make for the strengthening of said * * * bridge piers;

"(c) The liability or responsibility of each of the parties hereto with reference to any further strengthening of the said bridge or any part or support thereof which may hereafter appear necessary and, if the questions are submitted to the Court as hereafter provided, the Court may retain jurisdiction of this cause for such time and consider such matters hereafter arising as may be necessary to determine such liability or responsibility and the amounts thereof."

In the event of failure of the parties to reach a settlement it was agreed that the foregoing questions should be determined by the court upon the trial; "and in the final determination of such rights and liabilities * * * proper credit shall be given to the plaintiff for such amounts, if any, as it may have paid hereunder * * * if

it shall be determined that they should be paid or borne by defendant."

The suit was tried to the court as a condemnation proceeding, a jury being waived. Under the issues made by the pleadings as modified by the stipulation of July 17, 1924, referred to supra, two matters were presented for determination: (1) The amount of damages to which the plaintiff was entitled for the taking of its upland for a railway right-of-way and the infringement of its riparian rights appurtenant thereto on either side of the river; and (2) the question of "the liability or responsibility of each of the parties" for the cost of strengthening the bridge piers as a result of the diversion of the current of the river occasioned by the construction of the dam. Upon the trial the defendant claimed to hold an equitable title to its right-of-way on the west bank of the river, and evidence was introduced and received in support of this contention. This question affects the rights of the parties in respect to damage to the upland on the west bank of the river and in respect to the liability of the parties for the damage to the two bridge piers west of the center of the river resulting from the construction of the dam. Since the dispute thus injected into the controversy does not affect the rights of the parties east of the center of the river we shall first dispose of the questions relating to the two easterly piers and the east bank and then return to the rights of the parties west of the center of the river. We shall discuss the matters to be determined in this order for the further reason that a decision of the question relating to the easterly bridge piers will simplify the remaining issues and save repetition.

The trial court held that the plaintiff was liable for the damages to all four of the bridge piers occasioned by the construction of the dam, including the costs advanced for strengthening them, held that the defendant owned the equitable title to its right-of-way on the west bank of the river, and awarded the plaintiff $1295 damages for the taking of defendant's right-of-way on the east bank of the river. The plaintiff indicates its willingness to accept the damages awarded it for the right-of-way on the east bank and urges its appeal from the remainder of the judgment.

The record contains no bill of exceptions. In this court the appellant challenges only the sufficiency of the findings of fact of the trial court to support its conclusions of law. Two historical facts, already referred to, are thought to be of special importance. They are as follows:

On February 1, 1907, 34 Stat. 868, Congress passed an act permitting defendant to build a bridge across the Mississippi river in Morrison County, Minnesota. This act provided, "That the consent of Congress is hereby granted to [the defendant] to build a railway bridge across the Mississippi river at [the location described supra] in accordance with the provisions of the Act entitled 'An Act to regulate the construction of bridges over navigable waters,' approved March twenty-third, nineteen hundred and six." This is referred to by the parties as the Soo Bridge Act, and it was pursuant to its provisions that the bridge was built.

Plaintiff's dam was constructed under a license obtained from the Federal Power Commission dated August 25, 1923, and issued pursuant to an Act of Congress approved June 10, 1920, 41 Stat. 1063, 16 U.S. C.A. § 792 et seq. The license recites that it is issued subject to the Act of Congress and to the attached rules and regulations of the Commission, Article 15 of which rules provides:

"The Licensee shall be liable for all damages occasioned to the property of others by the construction, maintenance or operation of said project works, or the works appurtenant or accessory thereto, and in no event shall the United States be liable therefor."

In the light of this factual background we proceed to consider the contentions of the parties having in mind particularly their rights relating to the two bridge piers east of the center of the river. The plaintiff claims that the defendant is liable to it in damages for infringing its riparian rights by constructing these piers on the bed of the river in front of its property and, as a corollary of that contention, it denies liability for damage to the piers occasioned by the construction of its dam. The defendant denies liability for damages to any riparian rights and claims that plaintiff is responsible for the damage to the bridge piers. Specifically the plaintiff bases its contentions upon the following grounds:

1. The state of Minnesota holds the legal title to the bed of the Mississippi river in trust for the public, and the rights of the riparian owner to the bed of the stream are to be determined by Minnesota law

2. By the law of Minnesota, the riparian owner has a vested right in the bed of the stream to make every possible private beneficial use thereof, including the building of dams; such rights are subject to the control of the federal government in the interest of navigation only. Therefore, plaintiff is entitled to damages for defendant's interfering with its rights by the location of its bridge piers on the bed of the stream in front of its upland.

3. The Soo Bridge Act of February 1, 1907, gave defendant no right to occupy plaintiff's land on the bed of the river without compensation. By that act Congress merely consented to the building of the bridge. The United States had no property right in the bed of the stream, their right in navigable waters being limited to the control thereof for the purpose of navigation.

In response the defendant bases its contention that the plaintiff is liable for the injury to its bridge piers upon these grounds:

1. The use of the bed of the river to support the bridge was a public use, authorized by the plenary authority of the federal government, making the bridge a lawful structure.

2. Riparian rights in a navigable river are inherently subject to public uses; therefore no property rights of plaintiff were infringed by the construction of defendant's bridge.

3. The common law riparian right to build a dam has been completely abolished by the Rivers and Harbors Act of March 3, 1899, c. 425, 30 Stat. 1151, 33 U.S.C.A. § 401. Plaintiff's dam was built by virtue of a federal license expressly making it liable for damages occasioned by the dam to the property of others.

Counsel for the parties recognize that at common law the owner of land bordering on a navigable stream has certain exclusive rights to the use of the bed of the stream adjacent to his land and to the use of the water flowing thereover. Such rights are called riparian rights, and are said to be appurtenant to the title to the abutting land. A deed conveying the fast land on the shore carries title to the appurtenant riparian rights. Title to the upland acquired by condemnation will include such rights. These rights are subordinate to the rights of the public for the purposes of navigation, fishing, skating and all other public uses.

An element of plaintiff's theory is that in 1907 it owned the land bordering on the Mississippi in Morrison County, Minnesota, where it proposed to construct a dam; that its title to the upland included the riparian right to build a dam on the bed of the river adjacent thereto; that the defendant came upon its land as a trespasser and constructed its bridge and piers without acquiring the right to do so by purchase or otherwise; and that in this condemnation proceeding plaintiff is entitled to recover damages, not only for the right-of-way over the upland, but also for the infringement of its riparian rights by the construction of the piers in the bed of the stream.

In view of the contentions urged by defendant the ground will be cleared for decision by answering these three questions:

1. Did the Rivers and Harbors Act of 1899 nullify whatever riparian rights owners of land bordering on navigable streams in the United States may previously have had in the bed of such streams?

2. If not, did the Soo Bridge Act of 1907 grant defendant the right to take or invade plaintiff's riparian rights without compensation?

3. Did the license obtained by plaintiff to build its dam obligate it to compensate defendant for the damage to its bridge piers occasioned by the construction of the dam?

First. The claim that the common law riparian right to build a dam across a navigable stream has been completely abolished by the Rivers and Harbors Act of March 3, 1899, can not be sustained. Section 9 of that Act, 33 U.S.C.A. § 401, is relied upon by defendant. That section provides that "It shall not be lawful to construct or commence the construction of any bridge, dam * * * over or in any * * * navigable river * * * of the United States until the consent of Congress to the building of such structures shall have been obtained and until the plans for the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of War: * * *."

It will be observed that the riparian right to build a dam is not absolutely abolished by this statute; the right is suspended only until the consent of Congress is obtained and the plans have been approved by the designated officers. The statute merely

regulates the use of the right; it does not abolish it. The federal government derives its authority over the navigable rivers of the United States from the commerce clause of the Constitution, U.S.C.A.Const. art. 1, § 8, cl. 3; and that clause purports to delegate only the power to regulate interstate and foreign commerce. Unless Congress, therefore, should find it necessary in the regulation of commerce to abolish riparian rights it has no power to do so. Nothing in the statute, nor in its administration by the Chief of Engineers and the Secretary of War, nor in subsequent acts of Congress gives any support to the contention that Congress ever intended to take away such rights. Indeed the decisions of the Supreme Court rendered since 1899 disclose that such riparian rights, subject to the power of Congress to regulate their use to conform to the requirements of interstate commerce, are recognized by the federal government since the passage of that Act the same as they were before. See United States v. River Rouge Improvement Co., 1926, 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339; United States v. Chandler-Dunbar Water Power Co., 1913, 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063; Lewis Blue Point Oyster Cultivation Co. v. Briggs, 1913, 229 U.S. 82, 33 S.Ct. 679, 57 L.Ed. 1083, Ann. Cas.1915A, 232. The statute is intended only to protect the paramount right of the United States to control the use of the river in the interest of navigation.

Second. Did the Soo Bridge Act of 1907 give the defendant the right to invade plaintiff's riparian rights without compensation?

Defendant supports the affirmative of this proposition with the argument that (1) the use of the bed of the river to support the bridge was a public use, and that building the bridge under the authority of that act made it a lawful structure; and (2) that riparian rights in a navigable river being inherently subject to such public uses, no property rights of plaintiff were infringed by the construction of the bridge.

It is conceded by plaintiff that the bridge is a lawful structure in that Congress has consented for the time being to its construction, but it is denied that such consent confers any right to take away plaintiff's riparian rights without compensation. By the Act of 1907 Congress consented to the building of the bridge in accordance with the provisions of the Act entitled "An Act to regulate the construction of bridges over navigable waters," approved March 23, 1906, c. 1130; 34 Stat. 84; 33 Stat. 84; 33 U.S.C.A. §§ 491–498. Section 1 of the latter Act, 33 U.S.C.A. § 491, provided that when after March 23, 1906, authority is granted by Congress to any persons to construct a bridge over navigable waters of the United States the plans, specifications and location of the bridge must be approved by the Secretary of War and the Chief of Engineers before the bridge may be built. Section 2, 33 U.S. C.A. § 492, provided that any bridge built in accordance with the provisions of the Act "shall be a lawful structure and shall be recognized and known as a post route, upon which no higher charge shall be made for the transmission over the same of the mails, the troops, and the munitions of war of the United States than the rate per mile paid for the transportation over any railroad, street railway, or public highway leading to said bridge." It also gave the United States the right to construct, maintain, and repair, without charge, telephone and telegraph lines over the bridge. Section 3, 33 U.S. C.A. § 493, provided that if the bridge be a railroad bridge all railroad companies desiring the use of the bridge shall be entitled to equal privileges upon payment of reasonable compensation therefor. Section 4, 33 U.S.C.A. § 494, provided that navigation should not be obstructed by the bridge, and that tolls for the use of any toll bridge should be reasonable and just.

Nothing in either the Act of 1906 or the Act of 1907 refers to, or in any way may be construed to relieve, any "persons" building a bridge across a navigable river from compensating any one for property rights taken or infringed by the construction of the bridge. It is true that a bridge authorized and constructed pursuant to these statutes is a "lawful structure." But that means only that it conforms to law and is permitted and authorized by law. Webster's New International Dictionary. And the fact that permission is granted for its construction on the conditions outlined in the statute gives the owner of the bridge no superior rights over the property rights of others. Under these laws Congress may and has granted the privilege of constructing private bridges, toll bridges, public bridges and railroad bridges. It is elementary that when Congress gives its consent to the exercise of any privilege within the constitutional jurisdiction of the federal gov-

ernment it may impose conditions such as those contained in the act of March 23, 1906. Arizona v. California, 292 U.S. 341, 345, 54 S.Ct. 735, 78 L.Ed. 1298; James v. Dravo Contracting Co., 302 U.S. 134, 148, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318. It is equally fundamental that such consent of Congress to the exercise of the privilege does not carry with it any right not strictly federal. It grants no right to the person given the privilege to invade rights strictly within the jurisdiction of the state.

These observations make it necessary to inquire into the jurisdiction of the federal government over the bed of the Mississippi river in Minnesota and over the riparian rights of owners of the fast land along the river's shores.

It is settled that the state of Minnesota holds the legal title to the bed of the river at the place under consideration. Bradshaw v. Duluth Imperial Mill Co., 52 Minn. 59, 53 N.W. 1066. The right of the United States is limited to the control of the river and of the river bed for the purposes of navigation only. In United States v. River Rouge Improvement Co., 269 U.S. 411, 419, 46 S.Ct. 144, 147, 70 L.Ed. 339, it is said:

"The right of the United States in the navigable waters within the several States is, however, 'limited to the control thereof for the purposes of navigation.' * * * And * * * Congress * * * may not arbitrarily destroy or impair the rights of riparian owners by legislation which has no real or substantial relation to the control of navigation or appropriateness to that end."

The defendant argues that in the foregoing expression the court went further than was necessary, and that it is not a correct expression of the law. But in the recent case of James v. Dravo Contracting Co., supra, decided December 6, 1937, the Supreme Court reviewed and reiterated the law controlling the respective jurisdictions of the federal and state governments over the beds of navigable rivers. The court said:

"The title to the beds of the rivers was in the state. Pollard v. Hagan, 3 How. 212, 230, 11 L.Ed. 565; Shively v. Bowlby, 152 U.S. 1, 26, 14 S.Ct. 548, 38 L.Ed. 331; Port of Seattle v. Oregon & Washington R. Co., 255 U.S. 56, 63, 41 S.Ct. 237, 239, 65 L.Ed. 500; Borax Consolidated v. Los Angeles, 296 U.S. 10, 15, 16, 56 S.Ct. 23, 26, 80 L.Ed. 9. It was subject to the power of Congress to use the lands under the streams 'for any structure which the interest of navigation, in its judgment, may require.' Lewis Blue Point Oyster Cultivation Co. v. Briggs, supra. But, although burdened by that servitude, the state held the title. Gibson v. United States, 166 U.S. 269, 271, 272, 17 S. Ct. 578, 41 L.Ed. 996; Port of Seattle v. Oregon & Washington R. Co., supra; Borax Consolidated v. Los Angeles, supra. There does not appear to have been any acquisition by the United States of title to those lands, unless, as respondent urges, the occupation of the beds for the purpose of the improvements constituted an acquisition of title. But as the occupation was simply the exercise of the dominant right of the federal government (Gibson v. United States, supra, 166 U.S. 269, at page 276, 17 S.Ct. 578, 41 L.Ed. 996) the servient title continued as before. No transfer of the title appears. The Solicitor General conceded in his argument at bar that the state of West Virginia retained its territorial jurisdiction over the river beds, and we are of the opinion that this is the correct view." 58 S.Ct. 212.

The court further remarked:

"The possible importance of reserving to the state jurisdiction for local purposes which involve no interference with the performance of governmental functions is becoming more and more clear as the activities of the government expand and large areas within the states are acquired."

The further argument of defendant that because it is a public service corporation with right of eminent domain and its bridge is an instrumentality of interstate commerce it stands in respect to the riparian rights of plaintiff in exactly the same position as the government itself, is erroneous. If such were the rule, it would apply with equal force to the powers of the plaintiff, because the plaintiff is also a public service corporation with the right of eminent domain. But the United States does not share its sovereign power to regulate interstate commerce with the agencies that carry on such commerce, whether they be corporations or individuals. Plaintiff and defendant both derive their right of eminent domain from the state statutes, not from the federal government. Riparian rights in the Mississippi river are servient to the paramount right of the United States to regulate commerce and navigation, but not to the right of railroad companies to build bridges nor even to power companies to build dams.

In the exercise of its paramount right the United States and its agents, acting in its name and to accomplish its purpose, may use the bed of the river without compensation to the riparian owner. That is because the riparian rights are servient. James v. Dravo Contracting Co., supra. The defendant, however, in acting as a common carrier in interstate commerce is in no sense an agent of the United States. The federal government is not engaged in the business of interstate commerce. It only regulates those who are engaged in that business. It therefore has no agents in such business; and neither by the Soo Bridge Act nor by the Rivers and Harbors Act did the government appoint the defendant its agent nor authorize the defendant to take away anybody's private rights without compensation.

The contention that the use of the bed of the river to support the bridge was a public use; that riparian rights in a navigable river are inherently subject to such public uses; that consequently no property rights of plaintiff were infringed by the construction of defendant's bridge, is also fallacious. It is based upon an erroneous assumption and confuses the power of the government to use the bed of such rivers for improvements for navigation without compensation with its consent to a citizen to build a bridge across the river. Under the Fifth Amendment to the Constitution, U.S.C.A.Const. Amend. 5, private property may not be taken for a public use without compensation to the owner. The reason the government may use the bed of a navigable stream for structures in aid of navigation is because riparian rights are servient to such use. In United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 62, 33 S.Ct. 667, 672, 57 L.Ed. 1063, the Supreme Court said: "If, in the judgment of Congress, the use of the bottom of the river is proper for the purpose of placing therein structures in aid of navigation, it is not thereby taking private property for a public use, for the owner's title was in its very nature subject to that use in the interest of public navigation." In the same opinion the court said:

"This title of the owner of fast land upon the shore of a navigable river to the bed of the river is, at best, a qualified one. It is a title which inheres in the ownership of the shore; and, unless reserved or excluded by implication, passed with it as a shadow follows a substance, although capable of distinct ownership. It is subordinate to the public right of navigation, and however helpful in protecting the owner against the acts of third parties, is of no avail against the exercise of the great and absolute power of Congress over the improvement of navigable rivers. That power of use and control comes from the power to regulate commerce between the states and with foreign nations. It includes navigation and subjects every navigable river to the control of Congress."

The bed of a navigable river is not inherently subject to every public use by anybody who may wish to use it without compensation. It is servient only to the paramount rights of the federal and state governments; to the federal government for use in aid of navigation and to the state government for such public uses as are under its control. It is not servient to the right of public service corporations to build bridge piers or dams. The fact that defendant is engaged in interstate commerce does not render its business a public business. It is a private business affected only with a public interest and therefore subject to public regulation. Its property is not public property; and its bridges and trains are not commerce, but mere facilities for transportation. New York ex rel. Rogers v. Graves, 299 U.S. 401, 406, 57 S.Ct. 269, 81 L.Ed. 306.

We conclude that the consent of Congress to the building of defendant's bridge conferred upon it no right to infringe plaintiff's riparian rights nor to deprive it of any property right without compensation. The rights and liabilities of the parties in this respect depend upon the laws of the state of Minnesota.

Third. Did the license obtained by the plaintiff from the Federal Power Commission in 1923 to build its dam obligate it to compensate defendant for the damage to its piers occasioned by the construction of the dam?

The United States in granting through the Commission to the plaintiff a license to construct the dam exercised the same constitutional power which was exercised when the defendant was authorized to build its bridge. That was the paramount right of the government to regulate the flow of the river and the placing of obstructions in its bed in the interest of navigation. As observed supra, pending the obtaining of the license the right to construct the dam as an appurtenance to the fast land was suspended by federal statutes, but was not abolish-

ed. The riparian right to build the dam at no time ceased to exist, but such right was at all times servient to the supreme power of the federal government to regulate its exercise insofar as such regulation is appropriate to the interests of navigation. Such regulation is not, as shown above, for the interest of the defendant as a common carrier engaged in interstate commerce.

Neither does the condition in the license making the licensee "liable for all damages occasioned to the property of others by the construction" of the dam aid the defendant. The same regulation adds, "and in no event shall the United States be liable therefor." These provisions can not be construed as reversing the law of liability for damages. Rather they must be construed as intended for the purpose primarily of saving the United States harmless from claims for damages. "All damages" clearly means all lawful damages. If the clause may be construed as intended for the benefit of third persons, it can apply only to those owners of property whose legal rights might be invaded by the construction of the dam. At the time the bridge was built, and at the time the license was issued, the defendant was a trespasser upon plaintiff's property with full notice of the use to which plaintiff contemplated devoting its property. Defendant had not at those times condemned the banks of the river for its right of way. Defendant's only right under the circumstances was that plaintiff should not wilfully, wantonly, maliciously or intentionally do anything to injure its bridge piers. Dahl v. Valley Dredging Co., 125 Minn. 90, 145 N. W. 796, 52 L.R.A.,N.S., 1173; Caboni v. Union Carbide Co., D.C., 236 F. 302; Duree v. Wabash R. Co., 8 Cir., 241 F. 454; 45 C.J. 742. There is no claim that plaintiff acted from such a motive.

From any point of view, therefore, the defendant can not bring itself within a class for whose benefit the clause in question was inserted in the license.

For the foregoing reasons we hold that the plaintiff is neither liable nor responsible for the damages to defendant's bridge piers occasioned by the construction of its dam on account of any federal law or by reason of the character of defendant's business. It is settled by a long line of decisions, in addition to the cases already cited, that the rights and liabilities of the parties are to be determined by the laws of Minnesota. Barney v. Keokuk, 94 U.S. 324, 338, 24 L. Ed. 224; Hardin v. Jordan, 140 U.S. 371, 380, 11 S.Ct. 808, 838, 35 L.Ed. 428; Mitchell v. Smale, 140 U.S. 406, 11 S.Ct. 819, 840, 35 L.Ed. 442; Archer v. Greenville Sand & Gravel Co., 233 U.S. 60, 66, 34 S.Ct. 567, 58 L.Ed. 850. This results from the fact that the shores of navigable waters, the soil thereunder, and the rights appurtenant thereto were not granted to the United States by the constitution, but were reserved to the states respectively, Johnson v. Knott, 13 Or. 308, 10 P. 418; and "the new states have the same rights, sovereignty, and jurisdiction over this subject as the original states." Pollard's Lessee v. Hagan, 44 U.S. 212, 230, 3 How. 212, 11 L.Ed. 565; Mumford v. Wardwell, 73 U.S. 423, 436, 6 Wall. 423, 436, 18 L.Ed. 756.

In Minnesota the state holds the title to the navigable streams, not in "any private or proprietary right * * *, but * * * in its sovereign capacity, as trustee for the people, for public use." Lamprey v. Metcalf, 52 Minn. 181, 53 N.W. 1139, 1143, 18 L.R.A. 670, 38 Am.St.Rep. 541. The title of the riparian owner extends to low-water mark; but as to the space between high-water mark and low-water mark his title is qualified by the right of the public to use the same for purpose of navigation or other public purpose. State v. Korrer, 127 Minn. 60, 148 N.W. 617, 1095, L.R.A.1916C, 139, and cases cited and reviewed therein. As an incident of his ownership of the shore the riparian owner has well-defined rights in the water and the soil under it below low-water mark. These riparian rights include the right to the use of the water and the right of access to it; the right to build and maintain wharves, piers and landings in front of his land and to extend them into the river to the point of navigability; and the right to the unobstructed flow of the water in front of his premises. These rights are subordinate only to the paramount right of navigation or other public use. Union Depot, etc., Co. v. Brunswick, 31 Minn. 297, 17 N.W. 626, 47 Am.Rep. 789; State v. Korrer, supra. "The rights which thus belong to him as riparian owner of the abutting premises are valuable property rights of which he cannot be divested without consent, except by due process of law, and, if for public purposes, upon just compensation." State v. Korrer, supra, 148 N.W. 622; Brisbine v. Railway Co., 23 Minn. 114; Minnesota Canal & Power Co. v. Fall Lake Boom Co., 127 Minn. 23, 148 N.W. 561.

■ "A public service corporation authorized to condemn private property for public uses may * * * take the private rights of property of the riparian owner upon complying with the Constitution and the laws of the state, and upon making just compensation therefor." In re Otter Tail Power Co., 128 Minn. 415, 151 N.W. 198, 199, and cases cited. And a condemnation by a railroad company of the upland abutting upon the water will embrace, without mention in the description, all the incidental riparian rights appurtenant to the estate. Hanford v. St. Paul & D. R. Co., 43 Minn. 104, 42 N.W. 596, 44 N.W. 1144, 1148, 7 L.R.A. 722.

■ Under the decisions already cited it is held that riparian rights exist before the premises are improved or occupied, and that they can not be infringed without compensation by anyone other than the state or the United States in the exercise of its paramount right to make improvements in aid of navigation.

It is claimed that these rules governing the rights of riparian owners in Minnesota have been radically modified, if not annulled, by the decision of the Supreme Court of that state in Fish v. Chicago Great Western R. Co., 125 Minn. 380, 147 N.W. 431. There are dicta in the opinion of the court in that case which support that view. It is sufficient to point out that the dicta in that opinion are not in any way controlling for the reason that all of the foregoing principles have been reiterated by the Supreme Court in the subsequently decided cases of State v. Korrer, supra, and In re Otter Tail Power Co., supra. The Fish Case was decided May 15, 1914, the Korrer Case September 11, 1914, and the Otter Tail Power Co. Case February 19, 1915. Further, it was thought by the Justice who wrote the opinion in the Fish Case that the issue was controlled by federal authority, and he attempted to apply the decisions of the Supreme Court of the United States; but the opinion goes further than necessary in determining the question before the court and is not consistent with the more recent decisions of the Supreme Court of the United States.

■ Applying the Minnesota law to the facts found by the district court it is clear that the court erred in not holding that in condemning the upland abutting on the east bank of the river the defendant was liable to the plaintiff for damages for the infringement of its riparian rights, and that plaintiff was not responsible for damages to the two easterly piers. ■

■ There remains for consideration the question whether the title to the land taken by the defendant on the west bank of the river was properly an issue in the case, and, if so, whether the rights of the plaintiff or of the defendant were superior.

The facts relating to the title to the land in question as found by the court are as follows: The west end of defendant's bridge rests upon a tract of land described as Lot 1. On February 7, 1907, Frank Kusterman and Sophia, his wife, were the owners of all that lot. On that day they entered into an agreement with Carnes and Muncy by the terms of which they agreed "in consideration of one dollar and the covenants herein contained * * * to convey to the party of the second part (Carnes and Muncy) or persons designated by them * * * in fee simple" the real estate the title of which is now in dispute. The further consideration proposed was that Carnes and Muncy should subdivide the land whereupon the Kustermans agreed to execute deeds to the purchasers of the lots upon payment of the purchase price according to the terms proposed. This contract was recorded February 13, 1907. Carnes and Muncy never subdivided the land and failed to perform the contract. However, on December 7, 1907, Kusterman and his wife conveyed by warranty deed to Carnes and Muncy 5.5 acres of Lot 1 on which is located a portion of defendant's right-of-way approaching the west end of the bridge. The deed contained a recital that it was given pursuant to the terms of the contract of February 7, 1907. This deed was recorded December 12, 1907.

On April 15, 1907, Kusterman and his wife, in consideration of one dollar and in consideration of the construction of the railroad across the premises, gave the defendant a right of way contract for a deed to a strip 100 feet wide across the Lot. The defendant agreed to pay the grantors the sum of $50 per acre, payment to be made when the acreage was ascertained by the defendant. Permission was given defendant in the contract to enter upon the land and construct its railway and defendant immediately took possession and commenced to grade its right-of-way which was completed prior to August 1, 1907. The contract was taken by defendant without notice, other than the records, of the contract with Carnes and Muncy. It was recorded January 22, 1908.

The court found that the contract of February 7, 1907, between the Kustermans

and Carnes and Muncy was a contract of agency only and vested no title in the premises in Carnes and Muncy; that the deed executed by the Kustermans to Carnes and Muncy on December 7, 1907, and recorded on December 9, 1907, was not a performance of the agreement of February 7, 1907, but a separate and independent transaction and was taken by them with knowledge of defendant's contract of April 15, 1907, and of the fact that defendant had constructed its railroad across the premises described in their deed; that the contract of the Kustermans with the defendant of April 15, 1907, vested an equitable title in the defendant; and that plaintiff knew of the construction of defendant's railway and of the existence of its contract of April 15, 1907, at the time it acquired its deed from Carnes and Muncy on December 9, 1907. On the basis of these findings the decree awarded specific performance to the defendant and awarded plaintiff as damages the unpaid purchase price of the right of way over the 5.5 acre tract in the sum of $99.

The plaintiff contends the court erred in so holding and decreeing because—

(1) Defendant under the pleadings and stipulation on file, and by converting the suit into a condemnation proceeding under the statute, admits plaintiff's title; and the only question for the court to determine was the amount of plaintiff's damage.

(2) The statute of limitations had barred the claim of defendant to an equitable title under the contract.

(3) The contract of February 7, 1907, in fact vested an equitable title in Carnes and Muncy superior to any right of defendant.

In view of the state of the record the first of these contentions can not be sustained. The plaintiff pleaded ownership of the land by specific description where the ends of defendant's bridge rest on both banks of the river; alleged that defendant was a trespasser; and prayed for an injunction, damages and costs. The statute, § 6569, Mason's Minnesota Statutes 1927, under which the defendant converted the suit into a condemnation proceeding provides:

"6569. *Answer—Ascertainment of damages*—The defendant in such action, by answer, may admit and allege the taking of such land for railroad purposes, that compensation has not been made to plaintiff therefor, and that defendant is ready and willing to pay such compensation, and to have the amount thereof assessed by the jury trying such action if plaintiff's right to recover the land be established. And, when such answer is made, the jury shall find whether the plaintiff is entitled to recover the land, and, if so, the amount of compensation due him for the taking and perpetual use thereof for railroad purposes: Provided, that, if it appear that the land was so taken and appropriated with the consent and acquiescence of the owner, such owner shall recover no rents or profits which accrued prior to demand for compensation."

The answer "admits that plaintiff owns certain lands along and near the banks of said river within the points described in paragraph 2 of said complaint, but alleges that it has no knowledge or information sufficient to form a belief as to the amount of lands owned by plaintiff." The prayer for relief in the answer is that "this court fix and determine the amount of damages which plaintiff is entitled to by reason of defendant's taking and occupying plaintiff's lands upon which its line of railway is constructed, and that judgment be entered in favor of plaintiff and against defendant for such sum as this court may determine." The answer neither denies ownership of plaintiff nor claims title to any part thereof in defendant. There is no prayer for equitable relief by specific performance. The pleadings were not amended.

It will be noted that the statute, supra, provides that the defendant "may admit and allege the taking of such land for railroad purposes, that compensation has not been made to plaintiff therefor, and that defendant is ready and willing to pay such compensation." Section 6570 of the statutes provides that "Upon a verdict that plaintiff is entitled to recover the land, and for the amount of compensation due him as provided in § 6569, judgment shall be rendered, in substance, that plaintiff have and recover from the defendant the land in suit or, in lieu thereof, the compensation fixed by the jury."

It seems perfectly clear upon this record that the facts found by the court in respect to plaintiff's title and defendant's equitable rights under its contract of April 15, 1907, were not within the issues. The case presented the single issue of the amount of plaintiff's damage. Potts v. Minneapolis, etc., Railway Co., 124 Minn. 413, 145 N.W. 161. But we are confronted with a record containing no bill of exceptions. Appellant challenges only the sufficiency of find-

ings of fact to support the judgment. In this situation the rule in Minnesota seems to be settled that these matters were litigated by consent. In Union Central Life Insurance Co. v. Page, 190 Minn. 360, 251 N.W. 911, 912, the Supreme Court of Minnesota said:

"There is no settled case or bill of exceptions. All that is raised on the appeal is the sufficiency of the findings to support the judgment. Where there is no settled case or bill of exceptions, it is presumed that the evidence was sufficient to sustain the findings and, if the facts found are not within the issues, that they were litigated by consent. In re Trusteeship under Will of Rosenfeldt, 185 Minn. 425, 241 N.W. 573; Riebel v. Mueller, 177 Minn. 602, 225 N.W. 924, 66 A.L.R. 1; State ex rel. Yapp v. Chase, 165 Minn. 268, 206 N.W. 396; Anderson v. City of Montevideo, 137 Minn. 179, 162 N.W. 1073; Charles Betcher Lumber Co. v. Hastings, 131 Minn. 249, 154 N.W. 1072; Gourd v. County of Morrison, 118 Minn. 294, 136 N.W. 874; Pavelka v. Pavelka, 116 Minn. 75, 133 N.W. 176; Peach v. Reed, 87 Minn. 375, 92 N.W. 229; Stevens v. Stevens, 82 Minn. 1, 84 N.W. 457; Wheadon v. Mead, 71 Minn. 322, 73 N.W. 975; Brigham v. Paul, 64 Minn. 95, 66 N.W. 203; 1 Dunnell, Minn.Dig.(2d Ed. & Supp.) § 344."

The only question for our consideration, therefore, is whether the facts found support the legal conclusions of the court. If under these facts, the defendant was the equitable owner of the tract in question it was entitled to a decree for specific performance of its contract of April 15, 1907. Bredeson v. Nickolay, 147 Minn. 304, 180 N.W. 547. And if the plaintiff by the deed of December 9, 1907, acquired the legal title with knowledge of defendant's prior equity, the defendant was entitled to bring an action against the plaintiff, and on payment of the unpaid purchase price, compel a conveyance to it of the legal title to the property. Oliver Min. Co. v. Clark, 69 Minn. 75, 71 N.W. 908.

The second contention, that the defendant's claim to an equitable title is barred by the statute of limitations, is also without merit. The defendant's cause of action against its vendor accrued on or before August 1, 1907, since by the terms of the contract it was entitled to offer performance and demand a conveyance by that date. Short v. Van Dyke, 50 Minn. 286, 52 N.W. 643. The plaintiff, therefore, contends that this action has long since been barred by

Section 9191, Mason's Minnesota Statutes 1927, which reads:

"The following actions shall be commenced within six years: 1. Upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed."

The Supreme Court of Minnesota has held that this statute might be interposed as a bar to an action for specific performance of a contract for the sale of real estate. Lewis v. Prendergast, 39 Minn. 301, 39 N.W. 802. But in the case now before the court the equitable owner has been in continuous possession of the property from the date of the inception of its rights under the contract to purchase the right-of-way. In that situation the rule in Minnesota is that statutes of limitation can not operate to defeat the rights of a party not a stranger to the title and in the lawful possession of the property. Hammon v. Hatfield, 192 Minn. 259, 256 N.W. 94; Backus v. Burke, 63 Minn. 272, 65 N.W. 459; Sanborn v. Potter, 35 Minn. 449, 29 N.W. 64; Baker v. Kelley, 11 Minn. 480, Gil. 358, 368. In this respect the decisions of the Minnesota Supreme Court are in accord with the general rule that "Limitation laws can not compel a resort to legal proceedings by one who is already in the complete enjoyment of all he claims." Cooley, Constitutional Limitations, p. 366.

The Minnesota court has also held that "Laches will not be imputed to one in the peaceable possession of land under an equitable title, for delay in resorting to a court of equity for protection against the legal title." Hayes v. Carroll, 74 Minn. 134, 76 N.W. 1017. For these reasons it is our opinion that the defendant's cause of action for specific performance of its contract of April 15, 1907, has not been barred by Section 9191, Mason's Minnesota Statutes 1927, nor by laches, and that, therefore, under the facts as found by the trial court, the decree of specific performance was proper, unless plaintiff's title related back to the contract of February 7, 1907, between the Kustermans and Carnes and Muncy.

The third contention of appellant is that the contract of February 7, 1907, in fact vested an equitable title in Carnes and Muncy superior to the right acquired by defendant under its contract of April 15, 1907. Whatever title plaintiff had was derived from the Carnes and Muncy contract. The court found that this was a contract of agency only which was not performed and

that the deed of December 9, 1907, purporting to be given to Carnes and Muncy pursuant to the contract was not a performance of the contract in any respect but was a separate and independent transaction.

The trial court properly set out the complete contract in his findings of fact. He also found that the contract was one of agency. This latter "finding," however, is a legal conclusion, which is challenged by appellant. If this conclusion must be accepted by this court the argument is at an end. But it is the law that the terms of a contract, if it be ambiguous, are matters of fact to be determined in the same manner as other facts; by the jury, if it be a jury case, or by the court, if the jury be waived; while the construction of the contract and its legal effect are questions of law for the court. State v. Fellows, 98 Minn. 179, 187, 107 N.W. 542, 108 N.W. 825; Bell Lumber Co. v. Seaman, 136 Minn. 106, 161 N.W. 383, 384; Lucas v. Ganley Bros., 166 Minn. 7, 206 N.W. 934, 936; National Surety Corporation of New York v. Ellison, 8 Cir., 88 F.2d 399, 402. The assignment of error, therefore, requires a determination of the legal effect of the contract in question.

By the terms of the contract the Kustermans agreed to convey to Carnes and Muncy or to "persons designated by them" all of Lot 1, except 5 acres to be selected by the grantors after the dam was built, at $50 an acre plus a share in any excess over that price obtained by Carnes and Muncy by sales made by them after the land had been subdivided. But the contract did not bind Carnes and Muncy to subdivide the land, to purchase any part of it nor to pay for it at any time. Under the Minnesota law no title passed to Carnes and Muncy in this situation upon the making of the contract, and they acquired no interest in the land as purchasers. Womack v. Coleman, 92 Minn. 328, 100 N.W. 9, 11. The contention of appellant that this is a contract for a deed can not be sustained. It is elementary that "A contract for the sale of land is one in which one party agrees to buy and the other agrees to sell and each would be responsible for a breach of the contract." 66 C.J. 479. Because the contract obligates Carnes and Muncy neither to buy nor to pay for the land they could not be held responsible for a breach. Neither could the contract be enforced against them in equity. The court, therefore, properly held that the subsequent purchase of a parcel of the land by them was a separate and independent transaction, and not a performance of the contract. It follows that the legal title of plaintiff does not relate back to the contract, and that the equitable title of defendant is superior to the legal title acquired by plaintiff by the deed of December 9, 1907.

Having determined that the defendant was the equitable owner of the tract of land covered by its right-of-way over the upland of Lot 1 on the west side of the river it becomes necessary to consider the effect of the holding on the rights and liabilities of the parties with reference to the damages to the two westerly piers of defendant's bridge. It is evident that the plaintiff cannot be absolved from liability for the damage to these piers on the ground that defendant was a trespasser on plaintiff's land. On the acquisition of the equitable ownership of its right-of-way abutting the west side of the river the defendant acquired the riparian rights incident to the land. Hanford v. St. Paul & D. R. Co., supra. As riparian owner it is entitled to the natural flow of the water past its land. Morrill et al. v. Saint Anthony Falls Water Power Co., 26 Minn. 222, 2 N.W. 842, 37 Am.Rep. 399. There appears to be no question but that the plaintiff's dam with its tailraces resulted in an interference with the natural flow of the water past defendant's land and that this interference caused the injury and damage to the defendant's piers.

The defendant having placed its westerly bridge piers in the bed of the river with the consent of the Congress of the United States, holder of the paramount right to the use of the river between low-water marks, it follows on the basis of the foregoing conclusions that (1) plaintiff is not entitled to recover damage from the defendant on account of the construction of the two piers on the west side of the middle thread of the river, and that (2) plaintiff is responsible for the injury to those piers occasioned by the construction of its dam.

The court found that in accordance with the stipulation of the parties of July 17, 1924, the plaintiff advanced the necessary cost of strengthening the two easterly bridge piers in the following sums and on the given dates: October 15, 1924, $4,375; October 20, 1924, $11,237; November 21, 1924, $25,927.59; May 1, 1927, $6,647.34; and May 1, 1928, $7,870.98. The court erred in not awarding to the plaintiff judgment for the recovery of these sums with 6% interest from the dates of the respective advancements.

The appellant is satisfied with the award of $1295 damages for the taking of its upland on the east side of the river; and in its brief it says that it is "willing to accept the award of $99 as provided in the decree of the court, as representing the value of the fast land on the west bank."

Complaint is made of the court's judgment "that the parties hereto shall pay their respective costs." We are not disposed to disturb the court's judgment in this regard.

The result is that for the error pointed out the judgment of the lower court is reversed in so far as it relates to the liability and responsibility of the parties for damages to the defendant's two bridge piers resting on the east side of the middle of the Mississippi river and in all other particulars the judgment is affirmed. The case is remanded with instructions to vacate the judgment appealed from and to enter a judgment not inconsistent with this opinion. Costs on appeal in this court will be taxed one-third to the appellant and two-thirds to the appellee.

Modified and affirmed.